**CANADIAN IMPERIAL BANK OF COMMERCE, Plaintiff,**

v.

**SAXONY CARPET COMPANY, INC., Defendant.**

No. 94 Civ. 0283 (DAB).

United States District Court, S.D. New York.

Oct. 13, 1995.

Richard C. Raymond, Braunschweig Rachlis Fishman & Raymond, New York City, for plaintiff.

Nancy J. Silver, Abraham & Silver, New York City, for defendant.

BATTS, District Judge.

Defendants move, pursuant to Rule 12(b)(1) and 12(b)(2) of the Federal Rules of Civil Procedure, to dismiss Plaintiff's Complaint. Plaintiffs move, pursuant to Rule 56 of the Federal Rules of Civil Procedure, for summary judgment. For the following reasons, Defendant's motion to dismiss is denied, and Plaintiff's motion for summary judgment is granted.

## I. BACKGROUND

In 1986, Defendant Saxony Carpet Company, Inc. ("Saxony") and Elite Carpets Ltd. ("Elite") began a business relationship that lasted until 1988, when Elite ceased operation of its business. (Pl.'s Local Rule 3(g) Statement [hereinafter Pl. 3(g) ] ¶ 12; Def.'s Local Rule 3(g) Statement [hereinafter Def. 3(g) ] ¶ 9.) Saxony is in the business of selling custom-made designer carpeting. (Def. 3(g) ¶ 3.) Elite was in the business of manufacturing custom-made carpeting. Elite manufactured carpets in Canada for Saxony's business in New York. (Def. 3(g) ¶¶ 4, 9.)

Plaintiff Canadian Imperial Bank of Commerce ("CIBC") instituted this action in this Court to enforce a default judgment ("Canadian judgment") it had obtained against Defendant in the Superior Court of the District of Montreal, Province of Quebec, Canada, on May 17, 1991 for $72,149.16. (Pl. 3(g) ¶ 7; Def. 3(g) ¶ 17.) The dispute in the Montreal court involved an alleged account receivable based on certain contracts between Elite and Saxony for the manufacture and sale of custom-made carpeting. (Pl. 3(g) ¶ 10; Def. 3(g) ¶ 8.) As a lender for Elite, CIBC took as security for its loan a general assignment of Elite's receivables. (Pl. 3(g) ¶ 10; Def. 3(g) ¶ 4.)

According to Defendant Saxony, Elite approached Saxony in 1986 for the purpose of soliciting business from Saxony. The initial contact between the two companies involved meetings and negotiations, most of which were held in New York, between the principals of Saxony and Elite. (Def. 3(g) ¶¶ 11, 12.) The negotiations resulted in agreements whereby Elite would manufacture car-

pet for Saxony based upon designs commissioned by Saxony. (Def. 3(g) ¶ 9.)

According to the Plaintiff, Elite would receive orders from Saxony in the form of written purchase orders. Elite would accept the order by means of a writing sent from its offices in Quebec. Elite would then manufacture the carpet ordered by Saxony at Elite's plant in St. Terese, Quebec, and ship the carpet to New York. (Pl. 3(g) ¶ 16, 17.)

The record indicates that the initial stage of developing the business relationship took place at Saxony's offices in New York. (Def. 3(g) ¶ 11.) In July 1987, two of Saxony's principal executives (Mr. Alan Meiselman and his wife, Penny Meiselman, President and Secretary–Treasurer of Saxony, respectively) visited Elite's facilities in Canada for two days. (Pl. 3(g) ¶ 13.) Saxony characterizes the visit as "social in nature and made upon the request and invitation of Elite Carpet." (Def.'s Mem. in Opp'n at 15.) According to Plaintiff, Saxony made the visit for the purpose of inspecting Elite's mills, and that business between Elite and Saxony increased thereafter, from a level of $30–40,000 per annum to $100,000 per annum. (Pl. 3(g) ¶¶ 14, 15.)

In May 1991, Saxony was notified of the action brought by CIBC in the Superior Court of the District of Montreal, in the City of Montreal, Province of Quebec, Canada. Notice was given through personal service of process in New York City on Alan Meiselman. (Pl. 3(g) ¶ 4.) Saxony's counsel replied with a letter dated May 23, 1991, asserting that Saxony was not subject to personal or subject matter jurisdiction in the Montreal action. Other than this letter, Saxony took no action in response to the Canadian suit, and did not retain Canadian counsel to represent its interests in the matter. (Pl. 3(g) ¶ 6.)

On the basis of diversity of citizenship, CIBC now seeks enforcement of the Canadian judgment in this Court. Plaintiff CIBC argues that New York law and the principles of comity require the enforcement of foreign money judgments with the exception of very limited circumstances involving personal or subject matter jurisdiction, forum non conveniens, or contravention of New York's public

policies. As Plaintiff claims that these defects do not exist in this matter, Plaintiff moves for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.

Defendant Saxony argues that the judgment obtained in the Canadian court on default did not allow Saxony to defend the matter on its merits, and that the Canadian court lacked both personal and subject matter jurisdiction "by reason of the fact that all of the transactions between the parties occurred in the City and State of New York." (Def.'s Mem. at 3–4.) As noted before, Saxony characterizes the visit by Alan and Penny Meiselman as primarily social in nature. Furthermore, Saxony claims that the alleged account receivable is based on carpeting that was manufactured and delivered by Elite to Saxony in 1987 and 1988, and that the carpet in question was defective and of unmerchantable quality. Saxony also claims that Elite had acknowledged the carpeting was defective, but before a settlement could be reached by the parties resolving the matter, Elite went out of business. Defendant therefore moves to dismiss the action pursuant to Rules 12(b)(1) and (2) of the Federal Rules of Civil Procedure. In the alternative, Defendant, as both a second affirmative defense and as a counter-claim, claims damages suffered as a result of the defective carpeting.

## II. DISCUSSION

### A. Motion to Dismiss under Rule 12(b)

This Court· shall first consider Defendant Saxony's motion to dismiss pursuant to Rules 12(b)(1) and (2) of the Federal Rules of Civil Procedure. Defendant claims that the Canadian court lacked personal and subject matter jurisdiction and that the Canadian judgment is therefore null and void as a matter of law.

Rules 12(b)(1) and (2) are means for challenging the jurisdiction of the court before whom a matter is pending; in this case, Rules 12(b)(1) and (2) would be appropriate for contesting the jurisdiction of this Court to hear the present matter. Defendant Saxony, however, invokes these rules to challenge the jurisdiction of the Canadian court. This reliance on Rules 12(b)(1) and (2) is clearly erroneous, and therefore Defendant's motion to dismiss is DENIED.

### B. Summary Judgment Standards

Plaintiff has moved for summary judgment pursuant to Article 53, Section 5303, of the New York Civil Practice Law and Rules ("CPLR") and Rule 56 of the Federal Rules of Civil Procedure. CPLR Article 53, also known as the Uniform Foreign Money–Judgments Act, governs the recognition and enforcement of foreign country money judgments in New York courts. CPLR § 5303 states that foreign judgments, when conclusive between the parties, are enforceable "by an action on the judgment, a motion for summary judgment in lieu of a complaint, or in a pending action by counter-claim, cross-claim, or affirmative defense." N.Y.Civ. Prac.L. & R. § 5303 (Consol.1978).

Federal Rule of Civil Procedure 56(c) provides that summary judgment

shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed.R.Civ.P. 56(c). The party seeking summary judgment bears the initial responsibility of informing the court of the basis for its motion, and identifying which materials it believes demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The court deciding a summary judgment motion must "resolve all ambiguities and draw all inferences in favor of the party against whom summary judgment is sought." *LaFond v. General Physics Servs. Corp.,* 50 F.3d 165 (2d Cir.1995). " '[T]he trial court's task at the summary judgment motion stage ... is carefully limited to discerning whether there are any genuine issues of material fact to be tried, *not* to deciding them.' " *Id.* (quoting *Gallo v. Prudential Residential Servs., Ltd. Partnership,* 22 F.3d 1219, 1223 (2d Cir. 1994)). Once a motion for summary judgment has been properly made, the burden

then shifts to the nonmoving party to "set forth facts showing that there is a genuine issue for trial," Fed.R.Civ.P. 56(e). *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986); *see also Silver v. City University of New York*, 947 F.2d 1021, 1022 (2d Cir.1991).

C. CPLR Article 53: Uniform Foreign Money–Judgments Act

### 1. *New York Law Governing the Enforcement of Foreign Money Judgments*

In the seminal case governing this issue, the Supreme Court held that recognition of foreign judgments and proceedings are governed by principles of comity. *Hilton v. Guyot*, 159 U.S. 113, 163–64, 16 S.Ct. 139, 143–44, 40 L.Ed. 95 (1895). If the foreign forum provides a full and fair trial before a court of competent jurisdiction, under a system of procedural fairness akin to the principles governing United States courts, and there is nothing to show either prejudice or fraud in the foreign forum, then "the merits of the case should not, in an action brought in this country upon the judgment, be tried afresh ... upon the mere assertion of [a] party that the judgment was erroneous in law or fact." *Hilton*, 159 U.S. at 202–03, 16 S.Ct. at 158–59, *cited in Pariente v. Scott Meredith Literary Agency, Inc.*, 771 F.Supp. 609, 615 (S.D.N.Y.1991).

New York law governs actions brought in New York to enforce foreign judgments. *In re Union Carbide Corporation Gas Plant Disaster at Bhopal*, 809 F.2d 195, 204 (2d Cir.), *cert. denied*, 484 U.S. 871, 108 S.Ct. 199, 98 L.Ed.2d 150 (1987); *Pariente*, 771 F.Supp. at 615. The principles of comity are codified by statute in New York as the Uniform Foreign Judgments Recognition Act, CPLR Article 53. Except for certain specified exceptions, this statute provides that a foreign judgment will be enforced as "conclusive between the parties to the extent that it grants or denies recovery of a sum of money." N.Y.Civ.Prac.L. & R. § 5303 (Consol.1978).

Under CPLR § 5304(a) and (b), a foreign judgment is *not* conclusive if the judgment was rendered under a system which does not provide impartial tribunals or procedures compatible with the requirements of due process of law, or, as Defendant Saxony asserts in the instant case, if the foreign court did not have jurisdiction over the defendant or the subject matter of the action. N.Y.Civ.Prac.L. & R. § 5304(a) & (b) (Consol.1978). In discussing recognition of foreign judgments generally, the Second Circuit has stated:

> It is clearly established that in order to grant comity to a foreign court's award of a money judgment against a defendant, the foreign court must have obtained valid personal jurisdiction over the defendant. This principle reflects and is in accord with our concept of due process that, in order for comity to be extended, the foreign court must abide by fundamental standards of procedural fairness.

*Cunard S.S. Co. v. Salen Reefer Servs. AB*, 773 F.2d 452, 457 (2d Cir.1985) (citations omitted); *see also New Central Jute Mills Co., Ltd. v. City Trade & Industries, Ltd.*, 65 Misc.2d 653, 318 N.Y.S.2d 980 (N.Y.Sup.Ct. 1971).

New York case law dictates that the exceptions involving jurisdictional defects or procedural unfairness be construed especially narrowly "when the alien jurisdiction is, like Canada, a sister common law jurisdiction with procedures akin to our own." *Clarkson Co. v. Shaheen*, 544 F.2d 624, 630 (2d Cir. 1976); *DeYoung v. Beddome*, 707 F.Supp. 132, 135 (S.D.N.Y.1989). Moreover, mere divergence from American procedure does not render a foreign judgment unenforceable. *Pariente*, 771 F.Supp. at 616; *Ackermann v. Levine*, 788 F.2d 830, 842 (2d Cir.1986).

### 2. *Standards Governing the Exercise of In Personam Jurisdiction by a Foreign Court*

"To be subject to *in personam* jurisdiction in a foreign court, a defendant must have had certain 'minimum contacts' with the forum state and reasonable notice of the pendency of the action." *Ackermann*, 788 F.2d at 838 (citations omitted). CPLR § 5305(b) permits a court "to recognize other bases of jurisdiction and New York may, and appropriately should, recognize a foreign

judgment predicated on any jurisdictional basis it recognizes in its internal law." *Porisini v. Petricca*, 90 A.D.2d 949, 456 N.Y.S.2d 888, 890 (4th Dep't 1982) (citing Siegel, Practice Commentaries, McKinney's Consolidated Laws of N.Y., CPLR § 5305).

According to the standards articulated in both New York law and the proof of Quebec law offered by Plaintiff CIBC, the Canadian court obtained valid in personam jurisdiction over Defendant Saxony. Rule 44.1 of the Federal Rules of Civil Procedure provides that "[a] party who intends to raise an issue concerning the law of a foreign country shall give notice by pleadings or other reasonable written notice. The court, in determining foreign law, may consider any relevant material or source, including testimony, whether or not submitted by a party or admissible under the Federal Rules of Evidence." Fed.R.Civ.P. 44.1. Plaintiff CIBC raised the issue of Quebec law in its motion papers, thereby giving notice under Rule 44.1. Specifically, Plaintiff's motion papers include a declaration by an attorney admitted to the bar in Quebec as proof of the Quebec standards for in personam jurisdiction. *See* Khouzam Decl. attached to Notice of Motion.

According to the offer of proof, Saxony was subject to in personam jurisdiction in Quebec if the contract was concluded in Quebec *or* if the cause of action arose in Quebec. (Khouzam Decl. ¶¶ 8, 9.) Further, according to the affiant, both standards for obtaining in personam jurisdiction over Saxony in Quebec were fulfilled, though it appears that satisfaction of either standard alone would have been sufficient. (Khouzam Decl. ¶ 9.) The declaration states that "the contract was concluded in Quebec, as the last act necessary to bind Elite took place in Quebec upon written confirmation by Elite of Saxony's purchase order. The cause of action arose in Quebec because Saxony's nonpayment caused prejudice to Elite at its place of business in Quebec." (Khouzam Decl. ¶ 9.)

Regarding the New York standards pertaining to in personam jurisdiction, no simple test exists to determine the propriety of jurisdiction, and jurisdiction may be proper based on one telephone call, or impermissible based on numerous telephone calls and facsimile transmissions. *Manhattan Life Insurance Co. v. A.J. Stratton Syndicate*, 731 F.Supp. 587, 592 (S.D.N.Y.1990). However, New York courts frequently evaluate the validity of a foreign court's exercise of in personam jurisdiction based on whether a clear nexus existed between business transacted by the defendant and the cause of action. *Soloman Ltd. v. Biederman & Co.*, 177 A.D.2d 350, 576 N.Y.S.2d 118, 119 (4th Dep't 1991). New York's long-arm statute, CPLR § 302(a)(1), embodies this principle, and a New York court has stated that "[p]roof of one transaction in New York is sufficient to confer jurisdiction [over a nonresident] as long as the activities of the defendant in question were purposeful and there is a substantial relationship between the transaction and the claim asserted," *Staten Island Hosp. v. Alliance Brokerage Corp.*, 166 A.D.2d 574, 560 N.Y.S.2d 859, 861 (2d Dep't 1990).

A collection action on an account receivable underlies the suit brought in the Canadian court. The action arose in the business relationship between Elite and Saxony; that business relationship arose out of a contract between the two corporations for the manufacture of carpeting at Elite's plant in Quebec. On this basis, a clear nexus existed between the cause of action and the contacts Saxony had to the Canadian forum. Even if that were not the case, sufficient contacts existed to require this Court to recognize the Canadian judgment as a matter of comity. The business relationship between Elite and Saxony involved a number of purchase orders over a period of years, and, as the carpeting was manufactured in Canada at Elite's facilities, substantial portions of the contracts were performed in Canada. While the exact nature of the visit by two principals of Saxony to Canada is in dispute, both parties admit that the trip involved a tour of Elite's mills. Moreover, the record indicates that Elite and Saxony may have embarked upon further negotiations regarding a proposal to distribute Saxony's designs in Canada, and that a letter was sent to Canada in which Saxony sought to collect copyright royalties for designs on certain carpets. (Pl.'s Mem. at 7.)

Therefore, Defendant's contention that the foreign court did not obtain valid in personam jurisdiction is without merit. Other than arguing that the initial stage of negotiations between Elite and Saxony took place in New York, and that the 1987 visit was primarily social in nature, Defendant has not set forth any other facts contesting the Canadian court's jurisdiction over the Defendant or over the subject matter of the Canadian action.[1]

### 3. *Collateral Attacks on Foreign Default Judgments*

Defendant Saxony claims that the carpeting underlying the account receivable in question was defective, and that Elite and Saxony had been in the process of resolving the issue when Elite went out of business. Proof of this dispute is offered through the affidavit of Alan Meiselman, President of Saxony, attached to Defendant's pleadings. While these allegations might have constituted a valid defense on the merits had Defendant chosen to appear in the Canadian action, before this Court on these motions is neither the time nor the place to have them addressed. Absent a clear showing of fraud, a foreign default judgment is as conclusive an adjudication as a contested judgment. *Ackermann*, 788 F.2d at 842; *see also Clarkson*, 544 F.2d at 631; *Colonial Bank v. Worms*, 550 F.Supp. 55, 59 (S.D.N.Y.1982); *Porisini*, 456 N.Y.S.2d at 890.

Defendant has made no showing of fraud herein, and it failed to pursue the appropriate procedures to challenge the Canadian lawsuit or judgment. Therefore, Defendant may not now raise an affirmative defense involving the merits of the original action, nor may Defendant collaterally attack the judgment in this Court through a counterclaim. Accordingly, Plaintiff's motion for summary judgment is hereby granted in the full amount of the Canadian judgment, with interest as set forth on the face of that judgment.[2] Defendant's counterclaim is likewise dismissed.

### III. CONCLUSION

For the reasons above, the Defendant's motion to dismiss the action in this Court, pursuant to Rule 12(b), is DENIED. Plaintiff's motion for summary judgment, pursuant to Rule 56, is GRANTED. Defendant's counterclaim is DISMISSED.

### ORDER

The Clerk of the Court is directed to enter judgment in favor of the Plaintiff, in conformity with this Memorandum, and close the case.

SO ORDERED.

---

1. Defendant also relies upon *Koster v. Automark*, 640 F.2d 77 (7th Cir.1981), in which the court held that a Dutch default judgment could not be enforced in United States courts. Aside from the fact that the case was decided in a jurisdiction without a statutory provision similar to CPLR Article 53, the facts of that case are clearly distinguishable from our facts. In *Koster*, the action involved a Dutch court enforcing a judgment based on a contract between an Illinois corporation and a citizen of the Netherlands. Significantly, the contract was executed in Italy, involved goods manufactured in Switzerland, and the contact between the two parties was limited to a few telephone calls and letters, and a meeting in Italy.

2. The Canadian judgment calculates interest on the judgment at a rate of 5% annually, as of May 17, 1992, with additional indemnification provided for in Article 1078 of the Civil Code of Lower Canada.