2004-NMCA-089

94 P.3d 845

**Sandra SUBLETT, Plaintiff–Appellant,**

v.

**Scott WALLIN and Pillar To Post, a division of Pillar To Post, Inc., Defendants–Appellees.**

No. 24101.

Court of Appeals of New Mexico.

May 24, 2004.

Robert J. Maguire, Lucia Misa–O'Connor, Robert J. Maguire & Associates, P.C., Albuquerque, for Appellant.

Roger L. Prucino, Law Office of Roger L. Prucino, Santa Fe, for Appellees.

*OPINION*

PICKARD, J.

{1}   Defendant Scott Wallin (Wallin) is a franchisee of the foreign corporation Pillar To Post, Inc. (Pillar To Post), a home inspection business.  Wallin has named his New Mexico franchise (Franchise) "Pillar To Post." Plaintiff learned about Pillar To Post, Wallin, and Franchise through the Pillar To Post internet website and an advertisement in the Albuquerque phone book.  Plaintiff contracted with Wallin to inspect a house that Plaintiff planned to purchase in Tijeras, New Mexico.

{2}   Plaintiff purchased the property, but a few months later she discovered that the pipes in the radiant floor heating system were made from an allegedly defective material known as polybutylene.  The inspection had not revealed the existence of these pipes, although Plaintiff claims that she specifically inquired about them.

{3}   Plaintiff filed suit against Wallin, Franchise, and Pillar To Post, alleging negligence, negligent misrepresentation, fraud, prima facie tort, unfair trade practices, breach of contract, and emotional distress. The district court granted Pillar To Post's motion to dismiss for lack of personal jurisdiction.

{4}   Plaintiff appeals, alleging that Pillar To Post had the requisite minimum contacts with New Mexico through its relationship with Wallin and Franchise to support personal jurisdiction.  We hold that the franchise relationship in this case does not establish the basis for personal jurisdiction.

{5}   Plaintiff also asserts that Pillar To Post had minimum contacts with New Mexico through its internet website.  In a matter of first impression, we hold that when a website is essentially passive, that website does not support personal jurisdiction over a foreign entity such as Pillar To Post. Accordingly, we affirm.

**FACTS AND PROCEEDINGS**

{6}   Plaintiff was living in California when she decided to purchase a house in New Mexico.  In order to find a home inspector for the house that she desired, she searched

the internet through a commercial internet search engine. There she found the website for Pillar To Post, the home inspection service. Plaintiff used a feature on the Pillar To Post website labeled "Locate an inspector," which asks the user to enter the name of a city and then redirects the user to the nearest local franchise. Plaintiff was redirected to the website for Scott Wallin, owner of Franchise, which is located in Moriarty, New Mexico.

{7} After some consideration, Plaintiff decided to contract with Wallin and Franchise to inspect the home she wished to purchase. Still in California, Plaintiff contacted Wallin by telephone and explained her needs, and they agreed upon a time and place to meet in Tijeras for the inspection. Wallin completed the inspection and produced a report detailing the condition of the house. Plaintiff paid for the inspection by a check made out to "Pillar To Post." Plaintiff also appears to have received a "Visual Inspection Agreement" signed by Wallin, outlining the terms of their contract, although the agreement does not include Plaintiff's signature.

{8} About five months after the inspection, Plaintiff had purchased the home and called a plumber to repair the hot water heater. At that time, Plaintiff discovered that the pipes in the radiant heating system were made from a material called polybutylene, which Plaintiff claims is "notoriously defective." She filed suit against "Scott Wallin and Pillar To Post, a Division of Pillar To Post, Inc." Her claim stated that Wallin "knew, or should have known, that the polybutylene pipes installed in the subject property were defective and unreasonably dangerous" and that Wallin and Pillar To Post "negligently and/or fraudulently concealed the existence" of the defective pipes. She also alleged that Wallin and Pillar To Post "had reason to know" that Plaintiff would rely on the inspection in making a decision to purchase the home, the value of which Plaintiff alleged is substantially and adversely affected.

{9} Pillar To Post moved to dismiss for lack of personal jurisdiction. The motion asserted that Pillar To Post was not subject to New Mexico's long arm statute, NMSA 1978, § 38–1–16 (1971), because the complaint failed to allege sufficient facts to establish that Pillar To Post had minimum contacts with New Mexico. Plaintiff responded by arguing that the Pillar To Post internet website and the franchise relationship between Pillar To Post and Wallin were adequate to sustain personal jurisdiction. Plaintiff attached materials that included her own affidavit, a print-out of a website entitled "Pillar To Post in your area" that featured Wallin and Franchise, and the check from Plaintiff to "Pillar To Post" which had been endorsed "Pillar To Post[,] Scott Wallin[,] For Deposit Only."

{10} The district court held a brief hearing where counsel presented their arguments, and it granted the motion to dismiss without issuing findings of fact or conclusions of law. Plaintiff filed a motion for reconsideration, which attached a home buyer's warranty Plaintiff bought from Home Buyers Resale Warranty Corp. The warranty agreement listed Scott Wallin as broker and identified him as an agent for "Pillar To Post." The motion for reconsideration was denied, and Plaintiff appealed.

**DISCUSSION**

{11} The sole issue before us on appeal is whether the district court correctly determined that it lacked personal jurisdiction over Pillar To Post. The determination of whether the district court has personal jurisdiction is a question of law that we review de novo. *Harrell v. Hayes*, 1998–NMCA–122, ¶ 11, 125 N.M. 814, 965 P.2d 933. Because the district court based its ruling on the parties' pleadings and affidavits, our standard of review largely mirrors the standard governing appeals from the award or denial of summary judgment. *Id.* We construe the pleadings and affidavits in the light most favorable to the complainant, and the complainant need only make a prima facie showing that personal jurisdiction exists. *Cronin v. Sierra Med. Ctr.*, 2000–NMCA–082, ¶ 10, 129 N.M. 521, 10 P.3d 845.

{12} Pillar To Post is a foreign corporation, incorporated in the state of Delaware. In order for the district court to have

personal jurisdiction over Defendant Pillar To Post, the conduct of which Plaintiff complains must meet a three-part test:

> (1) Defendant[ ] must have done at least one of the acts enumerated in our long-arm statute, (2) Plaintiff['s] causes of action must have arisen from the act or acts, and (3) Defendant[ ] must have had minimum contacts with New Mexico sufficient to satisfy constitutional due process.

*Id.* ¶ 11.

{13} In order to meet the first part of the test, a plaintiff must show that a defendant did an act included in the long-arm statute, Section 38–1–16, which reads in pertinent part:

> A. Any person, whether or not a citizen or resident of this state, who in person or through an agent does any of the acts enumerated in this subsection thereby submits himself or his personal representative to the jurisdiction of the courts of this state as to any cause of action arising from:
>
>> (1) the transaction of any business within this state;
>>
>> . . . .
>>
>> (3) the commission of a tortious act within this state[.]

Plaintiff alleges that Pillar To Post's relationship with Wallin and Franchise, as well as the Pillar To Post website, enables Plaintiff to meet this test. We address each of these grounds for jurisdiction in turn.

**1. The franchisor/franchisee relationship between Pillar To Post and Wallin is not sufficient to subject Pillar To Post to personal jurisdiction.**

{14} Plaintiff alleges that various aspects of the relationship between Pillar To Post as a franchisor and Wallin as a franchisee constitute the "transaction of business" for long-arm statute purposes. "Transaction of any business" in this context is defined as "doing a series of similar acts for the purpose of thereby realizing pecuniary benefit, or otherwise accomplishing an object, or doing a single act for such purpose with the intention of thereby initiating a series of such acts." *Tercero v. Roman Catholic Diocese*, 2002–NMSC–018, ¶ 10, 132 N.M. 312, 48 P.3d 50

(internal quotation marks and citation omitted). Our case law establishes that "the analysis of whether the [defendant] transacted business ... within New Mexico merges with the inquiry regarding whether such activities constitute minimum contacts sufficient to satisfy due process concerns." *Id.* ¶ 8. Due process concerns dictate that in order for a non-resident to be subjected to the personal jurisdiction of a state court, the non-resident must have "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945) (internal quotations marks and citations omitted). "[I]t is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958).

{15} In our case of *Campos Enterprises, Inc. v. Edwin K. Williams and Co.*, 1998–NMCA–131, 125 N.M. 691, 964 P.2d 855, we discussed the issue of whether a franchisor/franchisee relationship gave rise to personal jurisdiction over the foreign franchisor. As in the present case, the plaintiffs in *Campos Enterprises, Inc.* hired a franchise, Tax and Business Service, to complete a service for them, namely, tax preparation. *Id.* ¶ 2. Also as in the present case, the *Campos Enterprises, Inc.* plaintiffs sued the franchisor, Edwin K. Williams and Co., for a variety of claims related to errors in the performance of that service. *See id.* ¶ 9.

{16} In *Campos Enterprises, Inc.*, we explained that while "entering into a franchise agreement with a New Mexico resident requiring payment of royalties outside the state may be the 'transaction of any business' contemplated by the long-arm statute, that fact alone is insufficient to establish personal jurisdiction." *Id.* ¶ 8. In keeping with the due process requirements discussed above, we also require plaintiffs "to connect their causes of action to [an] activity of [the d]efendant in New Mexico," *id.* ¶ 12, through "additional indicia of contacts within the state ...

sufficient to support jurisdiction." *Id.* ¶ 15. In *Campos Enterprises, Inc.*, we held that the plaintiffs' failure to connect the franchisor with the allegedly improper tax preparation activities of the franchise was fatal to their arguments in favor of personal jurisdiction. *Id.* ¶ 12.

{17}   In the present case, Plaintiff alleges that Pillar To Post transacted business in New Mexico by requiring payment of fees from Wallin and by charging sign-up fees for which Pillar To Post agrees to advertise for Wallin. However, because the record contains no evidence of the franchise agreement between Pillar To Post and Wallin, we do not consider any matters that may or may not have been covered in that agreement. *See State ex rel. Educ. Assessments Sys., Inc. v. Coop. Educ. Servs. of N.M., Inc.*, 110 N.M. 331, 332, 795 P.2d 1023, 1024 (Ct.App.1990) (holding that it is appellate counsel's duty to present a record adequate for review of an issue).

{18}   Plaintiff also contends that a listing in the Albuquerque telephone book, the fact that Plaintiff made out her check to "Pillar To Post," and the fact that the warranty listed Scott Wallin as agent for "Pillar To Post" indicates that Pillar To Post transacted business and received pecuniary gain in New Mexico. However, Pillar To Post has presented the unrebutted assertion that the check, the advertisement, and the warranty refer to Franchise, which also has the name "Pillar To Post." This is supported by the endorsement on the check, which indicates that it was received by "Pillar To Post Scott Wallin," and the local number in the telephone book listing. Thus, neither the advertisement nor the check indicate that Pillar To Post transacted business in New Mexico. Similarly, there is no indication that Pillar To Post had any connection to the warranty.

{19}   We also disagree with Plaintiff's characterization of Wallin as an agent of Pillar To Post. As we explained in *Campos Enterprises, Inc.*, "[t]he existence of a franchisor-franchisee relationship alone is insufficient to create a principal-agent relationship." 1998–NMCA–131, ¶ 18. In addition to the lack of evidence supporting an agency relationship, the Visual Inspection Agreement that Plaintiff attached to her complaint supports the notion that Wallin transacted all business on behalf of Franchise, not Pillar To Post. The agreement includes a provision that it is "by and between the above named Client and the undersigned, an independently owned and operated Franchisee of Pillar To Post, Inc." The bottom of the agreement indicates that each office is independently owned and operated, and the agreement is signed by Wallin as "FRANCHISEE: Pillar To Post ® Professional Home Inspection." These factors indicate that Wallin performed the inspection independently and not as an agent of Pillar To Post.

{20}   Furthermore, we also reject Plaintiff's contention that Pillar To Post transacted business in New Mexico when it trained Wallin. Again, the record does not show any evidence of training or where training might have occurred, except for the statement on the Pillar To Post website stating that generally their inspectors "are highly trained by our own professional staff" and the title of "Pillar To Post ® Inspector" among Wallin's credentials. In the absence of evidence indicating an ongoing training and supervision relationship between Wallin and Pillar To Post, we see no basis for finding that Pillar To Post transacted business or had minimum contacts in New Mexico in this respect.

{21}   To the extent that Plaintiff argues that Pillar To Post committed a tortious action for purposes of the long-arm statute, Section 38–1–16(A)(3), we disagree. "[U]nless a plaintiff can factually demonstrate a relationship between a franchisor and a franchise that connects the franchisor to the tortious act, whether that fact be an agency or otherwise, the statute is not satisfied." *Campos Enters., Inc.*, 1998–NMCA–131, ¶ 16. As stated above, we have already rejected Plaintiff's agency theory. The allegedly negligent or fraudulent acts upon which Plaintiff bases her tort claims are Wallin's inspection and his replies to her specific questions about the pipes. Neither of these events involve actions on the part of Pillar To Post.

{22} In short, Plaintiff has presented only a bare franchisor/franchisee relationship without any additional indicia of business transactions in the state. There is no evidence of any connection between Pillar To Post and Wallin's inspection of Plaintiff's home that would give rise to a finding that Pillar To Post had minimum in-state contacts. Accordingly, we find that the franchise relationship provides no basis for personal jurisdiction.

**2. The Pillar To Post internet website did not provide sufficient minimum contacts to establish personal jurisdiction.**

{23} Next, Plaintiff contends that the existence of the Pillar To Post internet website and its feature permitting users to locate a local Pillar To Post franchise constitute the transaction of business in New Mexico and the adequate minimum contacts to support personal jurisdiction. The question of whether a foreign corporation's website can support a finding of personal jurisdiction in New Mexico is one of first impression.

{24} Because this is our first case dealing with the internet in a jurisdictional context, some brief background information is appropriate. The internet is "an international network of interconnected computers" that allows users to access a massive amount of information by connecting to a host computer. *Reno v. ACLU*, 521 U.S. 844, 849–50, 117 S.Ct. 2329, 138 L.Ed.2d 874 (1997). A "website" consists of any number of web pages with a unique "address" that allows users to locate it. *Id.* at 852, 117 S.Ct. 2329. Access to a website is generally available to all internet users, and users can find websites through a variety of commercial search engines or by directly entering the site's address into their internet browser application. *Id.* The United States Supreme Court has characterized the internet as "a vast platform from which to address and hear from a worldwide audience of millions of readers, viewers, researchers, and buyers." *Id.* at 853, 117 S.Ct. 2329.

{25} Over the past ten years, courts nationwide have struggled to find an appropriate approach to determining what websites subject the operator to the jurisdiction of a foreign state where the site was viewed or used. *See generally* Michael J. Dunne & Anna L. Musacchio, *Jurisdiction Over the Internet*, 54 Bus. Law. 385 (1998). Two major approaches have emerged: an expansive view of personal jurisdiction exemplified by the case *Inset Systems, Inc. v. Instruction Set, Inc.*, 937 F.Supp. 161 (D.Conn.1996) (mem.), and a sliding scale approach first articulated in *Zippo Manufacturing Co. v. Zippo Dot Com, Inc.*, 952 F.Supp. 1119 (W.D.Pa.1997). Even more modern authorities, however, indicate that the issue is considerably more complex. *See generally Hy Cite Corp. v. Badbusinessbureau.com, L.L.C.*, 297 F.Supp.2d 1154 (W.D.Wis.2004); Michael A. Geist, *Is There a There There? Toward Greater Certainty for Internet Jurisdiction* 16 Berkeley Tech. L.J. 1345 (2001). All of the foregoing approaches operate with the backdrop of due process concerns detailed in the prior section.

{26} In the case of *Inset Systems, Inc.*, 937 F.Supp. at 162–63, the Connecticut corporation Inset Systems owned the trademark "INSET." Inset Systems filed a suit alleging trademark infringement against the Massachusetts corporation Instruction Set, Inc., when it discovered that Instruction Set, Inc. had purchased the website address "http://www.inset.com." *Id.* The federal court applied Connecticut's long-arm statute and held that Instruction Set, Inc. "purposefully availed itself of the privilege of doing business within Connecticut." *Id.* at 165. This holding was based on the notion that the http://www.inset.com website was analogous to a print, television, or radio advertisement, made more powerful because it is continuously accessible. *Id.* at 164–65. Without evidence of the number of Connecticut internet users who had accessed the site, the court assumed that thousands of Connecticut users could access the site, and it found that personal jurisdiction over the Massachusetts corporation was proper. *See id.* Many courts have relied on *Inset Systems, Inc.* and have adopted a similarly broad approach, although their facts might have satisfied a narrower test. *See, e.g., Maritz. Inc. v. Cybergold, Inc.*, 947 F.Supp. 1328, 1332–34 (E.D.Mo.1996) (mem. & order) (holding that

Missouri jurisdiction was proper in a trademark action against operators of a website in which users signed up for electronic mailboxes where they would receive targeted advertisements); *TELCO Communications v. An Apple A Day*, 977 F.Supp. 404, 405–07 (E.D.Va.1997) (mem.) (holding that Virginia jurisdiction was proper in a defamation action against operators of a website that featured negative press releases about the plaintiff); *State ex rel. Humphrey v. Granite Gate Resorts, Inc.*, 568 N.W.2d 715, 720–21 (Minn.Ct.App.1997) (holding that Minnesota jurisdiction was proper in a consumer fraud action against operators of a website that claimed to offer legal sports gambling), *aff'd*, 576 N.W.2d 747 (Minn.1998).

{27}  The *Zippo Manufacturing Co.* case takes a different analytic approach. In that case, the Zippo Manufacturing Company sued a website with the address "http://www.zippo.com" for various causes of action related to trademark infringement. 952 F.Supp. at 1121. The court began with the proposition that "the likelihood that personal jurisdiction can be constitutionally exercised is directly proportionate to the nature and quality of commercial activity that an entity conducts over the Internet." *Id.* at 1124. From there it posited a "sliding scale" that places websites on a continuum from the active solicitation and doing of business to the passive conveyance of information. *Id.* On an active website, users may "enter[ ] into contracts with residents of a foreign jurisdiction that involve the knowing and repeated transmission of computer files." *Id.* On a passive website, information is merely made available for those who are interested. *Id.* Between these two ends of the spectrum lie websites where "a user can exchange information with the host computer . . . [and] the exercise of jurisdiction is determined by examining the level of interactivity and commercial nature of the exchange of information that occurs on the Web site." *Id.* Many jurisdictions have adopted the *Zippo Manufacturing Co.* approach or one similar. *See, e.g.*, *Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414, 419 (9th Cir.1997) (holding that California jurisdiction was improper in a trademark action against operators of a website that advertised construction services);

*Conseco, Inc. v. Hickerson*, 698 N.E.2d 816, 820 (Ind.Ct.App.1998) (holding that Indiana jurisdiction was improper in a trademark action against the operator of a website that shared information about the plaintiff corporation).

{28}  In determining which approach is better for New Mexico, at least in a case like this one, alleging specific jurisdiction, we look to our existing personal jurisdiction case law. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 473 n. 15, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985) (contrasting "specific" jurisdiction, where the suit arises out of a defendant's contacts with the forum, with "general" jurisdiction, where the suit does not so arise); *Lakin v. Prudential Secs. Inc.*, 348 F.3d 704, 710 (8th Cir.2003) (limiting its use of the *Zippo Manufacturing Co.* test to specific jurisdiction). We have held that a business that "intentionally initiated commercial activities in New Mexico for the purpose of realizing pecuniary gain" subjects itself to personal jurisdiction. *Cronin*, 2000–NMCA–082, ¶ 22. However, we have also recognized that "[i]t is [a] defendant's activities which must provide the basis for personal jurisdiction, not the acts of other defendants or third parties." *Visarraga v. Gates Rubber Co.*, 104 N.M. 143, 147, 717 P.2d 596, 600 (Ct.App. 1986). We have also expressed approval for a framework that evaluates who initiated the transaction that forms the basis for jurisdiction, where the transaction was entered into, and where the performance was to take place. *CABA Ltd. Liab. Co. v. Mustang Software, Inc.*, 1999–NMCA–089, ¶ 12, 127 N.M. 556, 984 P.2d 803.

{29}  These precedents suggest that the more restrictive approach of the *Zippo Manufacturing Co.* case is better suited to New Mexico, at least where certain specific torts, such as defamation, are not involved. *See Calder v. Jones*, 465 U.S. 783, 787, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984) (explaining that defamation's effects are often directed toward a specific place); *see also Hy Cite Corp.*, 297 F.Supp.2d at 1159–60 (criticizing using the *Zippo Manufacturing Co.* test as an all-encompassing framework, although acknowledging its usefulness as a factor in individual cases). The sliding scale

analysis emphasizes the degree to which the website operator intentionally initiates the contacts. By ensuring that the website operator intended the site to facilitate interactive business-like exchanges with users, the *Zippo Manufacturing Co.* approach minimizes the possibilities that the actions of third parties will subject the operator to personal jurisdiction. Examining the level of interactivity of a website also inherently involves the three-part analysis articulated in *CABA Limited Liability Co.*, 1999–NMCA–089, ¶ 12. Measured by this test, the Pillar To Post website is not sufficient to confer jurisdiction. *See* Jason H. Eaton, Annotation, *Effect of Use, or Alleged Use, of Internet on Personal Jurisdiction in, or Venue of, Federal Court Case*, 155 A.L.R. Fed 535, § 4[b] (1999) (listing the many cases that do not find personal jurisdiction where informational websites are involved); *see generally* Richard E. Kaye, Annotation, *Internet Web Site Activities of Nonresident Person or Corporation as Conferring Personal Jurisdiction Under Long–Arm Statutes and Due Process Clause*, 81 A.L.R.5th 41 (2000).

{30} The Pillar To Post website appears to be primarily passive. We note at the outset that the only evidence in the record pertaining to the Pillar To Post website is a two-page printout of the page containing information on Wallin and Plaintiff's affidavit detailing her experience with the website. However, taking Plaintiff's allegations as true, the website merely provided information about the nearest franchise. The only interactive feature of the website that Plaintiff described was the "Locate an inspector" feature, which requested minimal information and provided little more than additional advertising information, i.e., contact information and background information on Wallin.

{31} Furthermore, Plaintiff initiated the website transaction from California by using a commercial search engine, and the transaction was complete when she received Wallin's information while still in California. All subsequent transactions, including the telephone calls, meeting, agreement, and inspection, occurred between Plaintiff and Wallin, either between California and New Mexico or in New Mexico. None of these subsequent transactions involved the website, except that the initial call used the contact information that the website provided. No further evidence of New Mexico involvement was presented.

{32} Finally, there is no indication that Pillar To Post benefitted monetarily because of Plaintiff's visit to the Pillar To Post website. Plaintiff's unsupported assertion that Wallin paid Pillar To Post in order to advertise on the website indicates, to the contrary, that Pillar To Post had already received its benefit from the website by contracting with its franchisees. Based on the record before us, the only monetary benefit from Plaintiff's use of the website went to Wallin, who received a return on his investment in that advertisement.

{33} To summarize, in order to determine personal jurisdiction based on a website, we adopt an approach that, at a minimum, requires a degree of interactivity on the site. A passive website, which merely provides information and offers no opportunity for interaction, will ordinarily not be enough to support personal jurisdiction, although we can contemplate defamation, libel, or trademark actions in which even a passive website may meet the minimum contacts threshold. In all cases, it is critical to remember that the issue of whether a particular defendant is subject to our long-arm statute must be decided on a case-by-case basis. *Winward v. Holly Creek Mills, Inc.*, 83 N.M. 469, 471, 493 P.2d 954, 956 (1972). We leave to another day the question of whether even an active website is sufficient to support personal jurisdiction in a particular case.

CONCLUSION

{34} We affirm the district court's grant of the motion to dismiss Defendant Pillar To Post, holding that New Mexico has no personal jurisdiction in this case.

{35} **IT IS SO ORDERED.**

FRY and VIGIL, JJ., concur.