2006-NMCA-116

142 P.3d 955

**MONKS OWN LIMITED and St. Benedictine Biscop Benedictine Corporation, Plaintiffs–Appellees,**

v.

**MONASTERY OF CHRIST IN the DESERT, Defendant–Appellant.**

**No. 25,787.**

Court of Appeals of New Mexico.

July 25, 2006.

Certiorari Granted, No. 29,973, Sept. 13, 2006.

Robert E. Tangora L.L.C., Robert E. Tangora, B. Cullen Hallmark, Garber & Hallmark, P.C., Santa Fe, NM, for Appellees.

Carla Skeen, Law Office of Carla Skeen P.A., Santa Fe, NM, for Appellant.

## OPINION

VIGIL, Judge.

{1} Appellant Montastery of Christ in the Desert's motion for rehearing is denied. The opinion filed in this case on June 27, 2006, is withdrawn and this opinion is substituted in its place.

{2} This case requires us to address an issue of first impression: whether a default judgment rendered in a Canadian court against a New Mexico corporation is subject to domestication in New Mexico under the New Mexico Uniform Foreign Money–Judgments Recognition Act (UFMJRA). NMSA 1978, §§ 39–4B–1 to–9 (1991). Concluding that sufficient contacts between the New Mexico corporation and Canada support a finding that the Canadian court had personal jurisdiction over the New Mexico corporation, we affirm the order of the district court domesticating the Canadian judgment in New Mexico.

## BACKGROUND AND PROCEDURAL HISTORY

{3} This case arises out of a breach of contract action. Defendant Monastery of Christ in the Desert (the Monastery), a New Mexico corporation, agreed to purchase a Canadian trade name for $150,000 from Plaintiff Monks Own Limited, a Canadian corporation. Prior to the sale, Monks Own operated an internet business of selling goods, and the Monastery purchased goods from Monks Own via the internet and e-mail. Plaintiff St. Benedict Biscop Benedictine Corporation, another Canadian corporation that was associated with Monks Own, took over the internet business, and the Monastery also agreed in the contract to continue purchasing those goods from St. Benedict. Alleging that the Monastery paid only half of the purchase price, Plaintiffs filed a breach of contract suit in the Ontario Superior Court of Justice in Ontario, Canada. The Monastery was personally served with process in New

Mexico and had actual knowledge of the Canadian proceedings. The adequacy of service of process pursuant to Rule 1–004 NMRA is not an issue in this case. Notwithstanding valid service and knowledge of the suit, the Monastery refused to defend or acknowledge jurisdiction of the Canadian court. Plaintiffs therefore obtained a default judgment against the Monastery in the Canadian court for $75,431.51 in U.S. dollars, plus $600 for costs in Canadian currency. Plaintiffs then filed a petition in the New Mexico district court to domesticate the judgment under the UFMJRA. The Monastery filed a motion to dismiss the petition contending that the Canadian judgment was not entitled to recognition under the UFMJRA because the Canadian court lacked personal jurisdiction of the Monastery under New Mexico long-arm jurisprudence. The district court disagreed with the Monastery and entered its order domesticating the Canadian court judgment in New Mexico. The Monastery appeals.

## DISCUSSION

### I. Preservation and Waiver of *In Personam* Jurisdiction Objection in Foreign Courts

■ {4} Plaintiffs argue that the Monastery waived its right to contest personal jurisdiction by the Canadian court when it failed to appear and defend itself in that court. We address this argument first.

{5} Whether the failure to appear before a foreign court to argue that it lacks personal jurisdiction itself constitutes a waiver of personal jurisdiction is an issue of first impression. Plaintiffs cite to *Society of Lloyd's v. Reinhart*, 402 F.3d 982 (10th Cir.2005) for the proposition that "[w]hen a party to an action in a foreign jurisdiction voluntarily ignores the foreign court, the party has waived any claim for lack of due process." *Reinhart* is not applicable. The defendants in *Reinhart* did not argue that the English court lacked personal jurisdiction. Instead, they asserted that various procedures of the English court were unfair and therefore violated their due process rights. *Id.* at 994. The *Reinhart* court stated that it rejected "the due process complaint of a party who was given, and ... waived, the opportunity of making the adequate presentation in the [foreign forum]." *Id.* To the extent that *Reinhart* is considered for the proposition that failure to appear in a foreign court constitutes a waiver of personal jurisdiction, we reject its reasoning.

■ {6} We hold that a party is not required to raise an objection to personal jurisdiction before the foreign forum in order to preserve the issue for our appellate review. The issue is preserved under the UFMJRA by raising it before the district court in a proceeding seeking to domesticate the foreign judgment. *See Electrolines, Inc. v. Prudential Assurance Co.*, 260 Mich.App. 144, 677 N.W.2d 874, 878, 885–86 (Mich.Ct. App.2003) (holding that where Liberian court entered a default judgment against defendants who failed to appear, the defendants did not waive their defense of lack of personal jurisdiction because they raised the issue in their first responsive pleading submitted to the Michigan trial court from whom domestication of the judgment was sought). This comports with our principle that in order "[t]o preserve an issue for review on appeal, it must appear that appellant fairly invoked a ruling of the trial court on the same grounds argued in the appellate court." *Woolwine v. Furr's, Inc.*, 106 N.M. 492, 496, 745 P.2d 717, 721 (Ct.App.1987). The Monastery invoked the district court's ruling on personal jurisdiction at its earliest opportunity by filing its motion to dismiss foreign money judgment. Therefore, the issue was preserved for our review.

### II. Enforcement of Foreign Money Judgments

■ {7} The U.S. Supreme Court case regarding the enforcement of foreign money judgments is *Hilton v. Guyot*, 159 U.S. 113, 163–64, 16 S.Ct. 139, 40 L.Ed. 95 (1895), which holds that the recognition of foreign judgments and proceedings are governed by principles of comity. These principles prevent cases decided in foreign forums from being retried in this country "upon the mere assertion of [a] party that the judgment was erroneous in law or in fact" absent a showing (1) that the foreign forum did not provide a full and fair trial before a court of competent

jurisdiction, (2) that the foreign forum does not follow fair procedures that are akin to the principles governing United States Courts, or (3) the presence of prejudice or fraud. *Id.* at 202–03, 16 S.Ct. 139; *Pariente v. Scott Meredith Literary Agency, Inc.*, 771 F.Supp. 609, 615 (S.D.N.Y.1991). These principles of comity have been codified by the UFMJRA.

{8} The parties do not dispute that the judgment in the case at bar is a final, appealable "foreign judgment" under the UFMJRA as it has granted a sum of money and was rendered by a "foreign state." Section 39–4B–2; Section 39–4B–3. In New Mexico, such judgments are enforceable "in the same manner as the judgment of a sister state that is entitled to full faith and credit." Section 39–4B–4. Foreign judgments are not entitled to recognition if they are not "conclusive," and a foreign money judgment is not conclusive under the UFMJRA when "the foreign court did not have personal jurisdiction over the defendant." Section 39–4B–5(A)(2). The Monastery argues that the Canadian court did not have personal jurisdiction over the Monastery and that the Canadian court's default judgment is therefore not subject to domestication in New Mexico. We disagree.

### III. Exercise of Personal Jurisdiction By a Foreign Court

{9} In order to decide whether the Canadian judgment is subject to domestication in New Mexico, we must interpret the UF-MJRA. Interpretation of a statute is a question of law that we review de novo. *New Mexicans for Free Enter. v. City of Santa Fe*, 2006–NMCA–007, ¶ 11, 138 N.M. 785, 126 P.3d 1149.

■ {10} The section of the UFMJRA dealing with personal jurisdiction lists several bases for not refusing recognition of a foreign judgment. One such basis is that "[a] foreign judgment shall not be refused recognition for lack of personal jurisdiction if ... the defendant prior to the commencement of the proceedings had agreed to submit to the jurisdiction of the foreign court with respect to the subject matter involved." Section 39–4B–6(A)(3). Because the contract contains a choice of law provision which states, "[t]his Agreement shall be governed pursuant to the laws of the Province of Ontario," Plaintiffs argue that this section of UFMJRA is applicable. We reject Plaintiffs' argument. It is clear that a choice of law clause in a contract, without more, is insufficient to establish that one has agreed in advance to submit to the jurisdiction of the courts in any forum. *See Telephonic, Inc. v. Rosenblum*, 88 N.M. 532, 537, 543 P.2d 825, 830 (1975) (holding that a clause stating that a contract would be governed by New Mexico laws was insufficient to demonstrate that a California defendant consented in advance to submit to the jurisdiction of New Mexico courts).

{11} The UFMJRA also states that our courts "may recognize other bases of jurisdiction." Section 39–4B–6(B). It is under this section that we employ a minimum contacts analysis to determine whether the Canadian court had personal jurisdiction over the Monastery.

■ {12} The parties disagree over who has the burden of proof on this issue. The Monastery cites to *Sanchez v. Church of Scientology*, 115 N.M. 660, 663, 857 P.2d 771, 774 (1993), arguing that when jurisdiction is challenged by the defendant, the plaintiff has the burden of proof to demonstrate jurisdiction. Plaintiffs argue that under the UF-MJRA, "the party contesting domestication has the burden to prove its defense." We agree with Plaintiffs that *Sanchez* is inapplicable because it did not involve domestication of a foreign money judgment in New Mexico and we hold that the Monastery has the burden of proof on this issue. *See Pinnacle Arabians, Inc. v. Schmidt*, 274 Ill.App.3d 504, 210 Ill.Dec. 963, 654 N.E.2d 262, 265 (1995) (stating that where an Illinois defendant contested the domestication of a judgment rendered by a Canadian court in favor of a Canadian plaintiff, the Appellate Court of Illinois stated that "[t]here is a strong presumption that the rendering court had jurisdiction and it is defendant's duty to rebut the presumption").

■ {13} The parties disagree about whether the determination of personal juris-

diction is determined by the laws of the enforcing court (New Mexico) or those of the rendering court (Canada). The plain language of the UFMJRA enumerates specific criteria that guides the enforcing court in determining whether personal jurisdiction exists in the rendering court. *See* § 39–4B–6. We therefore have no difficulty concluding that the New Mexico district court as the enforcing court applies New Mexico law, not Canadian law, to determine whether the Canadian court had personal jurisdiction over the Monastery under the UFMJRA. Other courts have reached the same result. *See Pure Fishing, Inc. v. Silver Star Co.*, 202 F.Supp.2d 905, 913–17 (N.D.Iowa 2002) (applying the Iowa version of the UFMJRA and federal case law to determine whether an Australian court had jurisdiction over the defendant); *Canadian Imperial Bank of Commerce v. Saxony Carpet Co.*, 899 F.Supp. 1248, 1252 (S.D.N.Y.1995) (stating that New York law governs actions brought in New York to enforce foreign judgments, including standards governing the exercise of personal jurisdiction by a foreign court).

■ {14} This brings us to the remaining issue of whether the Ontario court had personal jurisdiction over the Monastery under "other bases of jurisdiction" as articulated by Section 39–4B–6(B). We hold that the Monastery had sufficient minimum contacts with Canada to confer personal jurisdiction under this provision of the UFMJRA.

{15} We are persuaded by the analysis set forth in the factually-similar *Canadian Imperial Bank* case. *Canadian Imperial Bank* involved a Canadian bank that obtained a default judgement in Quebec, Canada against a New York corporation. *Canadian Imperial Bank*, 899 F.Supp. at 1250–51. The New York corporation negotiated with a Canadian corporation and the two parties formed a series of agreements whereby the Canadian corporation would manufacture custom carpet for the New York corporation based upon the designs that the latter commissioned. *Id.* at 1250. The accounts receivable owed to the Canadian corporation by the New York corporation were assigned to a Canadian bank and the dispute in *Canadian Imperial Bank* arose when the bank foreclosed on the

accounts receivable as security for a loan made to the Canadian corporation. *Id.* Like the case at bar, the New York corporation received proper service of process but elected not to defend itself in Canada. *Id.* A default judgment was therefore entered in favor of the Canadian bank who then sought to domesticate the judgment in New York. *Id.* The New York corporation then argued before the American enforcing court that the Canadian court lacked personal jurisdiction "by reason of the fact that all of the transactions between the parties occurred in the City and State of New York." *Id.* at 1251 (internal quotation marks omitted). This argument was rejected. *Id.* at 1254.

{16} The *Canadian Imperial Bank* court held that personal jurisdiction existed under both New York's long-arm statute and the common law. *Id.* at 1253. In its analysis, the *Canadian Imperial Bank* court considered "whether a clear nexus existed between business transacted by the defendant and the cause of action." *Id.* The court concluded that such a nexus existed based solely on: (1) the collection action underlying the suit brought in the Canadian court arose out of the business relationship between the New York and Canadian corporations, and (2) the business relationship arose out of a contract between the two entities for the manufacture of carpeting at the Canadian corporation's plant in Quebec. *Id.*

{17} Additionally, the *Canadian Imperial Bank* court went on to state that even if the above facts were absent, sufficient contacts existed to require the *Canadian Imperial Bank* court "to recognize the Canadian judgment as a matter of comity." *Id.* The *Canadian Imperial Bank* court enumerated these contacts with the Canadian forum as follows: (1) the relationship between the corporations involved "a number of purchase orders over a period of years"; (2) substantial portions of the contracts were performed in Canada because that is where the carpeting was manufactured; (3) regardless of the exact nature of a visit paid by the New York executives to Canada, both parties admitted that the visit included a tour of the Canadian corporation's manufacturing facilities; and (4) the record indicated that the two corporations "may

have embarked upon further negotiations regarding a proposal to distribute [the New York corporation's] designs in Canada." *Id.*

{18} We adopt *Canadian Imperial Bank's* analytical framework to determine whether the Canadian court in this case had personal jurisdiction over the Monastery. We therefore consider whether personal jurisdiction was valid under our long-arm statute and common law. *Id.*

{19} Under NMSA 1978, Section 38–1–16(A)(1) (1971), a party submits himself to the jurisdiction of New Mexico courts as to any cause of action arising from "the transaction of any business within this state." The parties agree that this is the only basis of long-arm jurisdiction that is applicable. Therefore, we determine whether the Monastery transacted any business in Canada within the meaning of this statute.

{20} "Transaction of any business" is defined as "doing a series of similar acts for the purpose of thereby realizing pecuniary benefit, or otherwise accomplishing an object, or doing a single act for such purpose with the intention of thereby initiating a series of such acts." *Sublett v. Wallin*, 2004–NMCA–089, ¶ 14, 136 N.M. 102, 94 P.3d 845 (internal quotation marks and citations omitted). The analysis regarding transaction of any business within New Mexico "merges with the inquiry regarding whether such activities constitute minimum contacts sufficient to satisfy due process concerns." *Id.* (internal quotation marks and citation omitted). This familiar due process analysis requires this Court to determine whether a non-resident should be subject to the personal jurisdiction of a state court to ascertain whether the non-resident has "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Id.* (internal quotation marks and citations omitted). " '[I]t is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.' " *Id.* (quoting *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958)).

{21} The record before us demonstrates that the Monastery had sufficient minimum contacts with Canada under our own long-arm statute and common law. A breach of contract action underlies the suit brought in the Canadian court by Plaintiffs. The contract was for the purchase of a Canadian trade name by the Monastery. Further, the contract required Monks Own Limited to "file with the Registrar for Trade-marks of the Canadian Intellectual Property Office the Assignment of the Trade-mark for 'MONKS OWN' to [the Monastery]." Thus, the Monastery clearly purposefully availed itself of benefits and protections under Canadian law that would be extended to the Canadian trade name which was the subject of the sale. Additionally, as discussed above, the contract contained a choice of law clause stating that Canadian law governed the agreement. While this fact is not sufficient by itself, it is another factor that persuades us that the Monastery knowingly availed itself of the benefits and protections of Canadian law. Therefore a clear nexus existed between the cause of action and the contact the Monastery had to the Canadian forum. Our holding is consistent with those of other jurisdictions who have determined that a minimum contacts test is appropriate in determining other bases of jurisdiction. *See Bank of Montreal v. Kough*, 430 F.Supp. 1243, 1247–48 (N.D.Cal.1977) (holding that sufficient minimum contacts existed to give a Canadian court personal jurisdiction over the defendant where the defendant engaged in business in British Columbia, was a director and shareholder of a company operating in British Columbia, and had signed a contract in British Columbia specifically related to his other dealings in that province); *Nippon Emo–Trans Co. v. Emo–Trans, Inc.*, 744 F.Supp. 1215, 1232–33 (E.D.N.Y.1990) (holding that sufficient minimum contacts existed to give a Japanese court personal jurisdiction over the defendant where the defendant sent shipments of substantial value to Japan and where the plaintiff acted as the defendant's agent in Japan).

{22} Additionally, sufficient contacts exist to recognize the Canadian judgment as

374

a matter of comity. Representatives of the Monastery visited Canada on its behalf to receive help from Plaintiffs in launching the Monastery's new retail store in New Mexico to sell Plaintiffs' products. Moreover, the extensive consultations and negotiations between the parties regarding the contract and launching the Monastery's New Mexico retail store to sell the products required a great deal of effort on the part of Plaintiffs in Canada no matter what form the communications took, whether in person, via e-mail, facsimile, or telephone. Substantial portions of the contract were clearly performed in Canada when St. Benedict accepted and processed orders from its location in Canada. Finally, the business relationship of the parties involved a number of purchases made by the Monastery over a period of a year or more, and the Monastery paid Plaintiffs via wire transfers from an American bank to a Canadian bank. The Monastery therefore clearly had numerous contacts with Canada related to the contract that is the subject of this appeal to satisfy comity requirements.

{23} For all the foregoing reasons we conclude that the Canadian court properly obtained personal jurisdiction over the Monastery.

## CONCLUSION

{24} For the reasons above, we affirm the order of the district court.

{25} **IT IS SO ORDERED.**

WE CONCUR: A. JOSEPH ALARID and RODERICK T. KENNEDY, Judges.