2007-NMSC-054

168 P.3d 121

MONKS OWN, LIMITED, and St. Benedictine Biscop Benedictine Corporation, Plaintiffs–Respondents and Cross–Petitioners,

v.

MONASTERY OF CHRIST IN the DESERT, Defendant–Petitioner and Cross–Respondent.

No. 29,973.

Supreme Court of New Mexico.

Sept. 5, 2007.

Carla Skeen, Law Office of Carla Skeen, P.A., Santa Fe, NM, for Petitioner and Cross–Respondent.

Robert E. Tangora, Robert E. Tangora, L.L.C., B. Cullen Hallmark Jr., Garber & Hallmark, P.C., Santa Fe, NM, for Respondents and Cross–Petitioners.

## OPINION

BOSSON, Justice.

{1} In this case we are asked to examine the New Mexico Uniform Foreign Money–Judgments Recognition Act (the UFMJRA). NMSA 1978, §§ 39–4B–1 to –9 (1991). Specifically, we address whether New Mexico courts apply New Mexico or Canadian law to determine if the Canadian court had personal jurisdiction over the New Mexico party when it entered a judgment against that party. In other words, we are asked to determine which law is to be applied, and in what order we apply that law, when determining personal jurisdiction of the foreign court. This question is important because if the Canadian court did not have personal jurisdiction, then under the UFMJRA a New Mexico court need not domesticate the judgment. Although we utilize a somewhat different analysis from the Court of Appeals, we reach the same conclusion and affirm.

## BACKGROUND

{2} Plaintiff, Monks Own Limited (Monks Own), a Canadian corporation, entered into a contractual agreement with Defendant Monastery of Christ in the Desert (the Monastery), for sale of its tradename.[1] The contract stipulated that the Monastery pay $150,000 for the name. After receiving only half the agreed-upon price for the trade name, Monks Own filed a complaint for breach of contract in the Ontario Superior Court of Justice. Although having received proper service, the Monastery refused to defend in the Canadian court because the Monastery did not recognize that courts jurisdiction over it as a New Mexico business. The Canadian court subsequently entered a default judgment against the Monastery.

{3} Monks Own then retained New Mexico counsel and filed a petition in New Mexico district court for recognition of its Canadian judgment under the authority of the UFMJRA, which "applies to any foreign judgment that is final and conclusive and enforceable where rendered." Section 39–4B–3. Under the UFMJRA, any such foreign judgment is "conclusive between the parties to the extent that it grants or denies recovery of a sum of money," and such judgments are "enforceable in the same manner as the judgment of a sister state that is entitled to full faith and credit." Section 39–4B–4. Thus, the UFMJRA sets out procedures for the courts of this state to follow when determining whether a foreign judgment should be enforced against a New Mexico party. An important part of the UFMJRA addresses personal jurisdiction of the foreign court over a New Mexico party. Section 39–4B–6. Specifically, the UFMJRA enumerates situations in which personal jurisdiction of the foreign court is conclusive, therefore allowing for the domestication of the foreign judgment. *Id.*

{4} It is the personal jurisdiction section of the UFMJRA with which we are most concerned in this appeal. In response to Monks Own's petition, the Monastery filed a motion to dismiss claiming the judgment could not be domesticated under the UFMJRA because the Canadian court lacked personal jurisdiction over it. The Monastery claimed that Monks Own could not demonstrate sufficient minimum contacts between the Monastery and Canada to satisfy due process standards under American jurisprudence. The district court disagreed and domesticated the judgment. The Court of Appeals affirmed.

---

1. The Monastery also agreed to continue purchasing certain goods from St. Benedictine Biscop Benedictine Corporation, another Canadian corporation affiliated with Monks Own. St. Benedictine was a plaintiff in the original proceedings in Canada, the proceeding in the New Mexico district court to domesticate the Canadian judgment, and on appeal to the Court of Appeals. *Monks Own Ltd. v. Monastery of Christ in the Desert,* 2006–NMCA–116, ¶ 3, 140 N.M. 367, 142 P.3d 955. However, St. Benedictine is not a named party in this appeal.

*Monks Own Ltd. v. Monastery of Christ in the Desert,* 2006–NMCA–116, ¶ 2, 140 N.M. 367, 142 P.3d 955. We take this opportunity to examine the UFMJRA, which we have had few prior occasions to address.

## DISCUSSION

{5} At the outset of our discussion, we note that the Court of Appeals correctly observed that "a party is not required to raise an objection to personal jurisdiction before the foreign forum in order to preserve the issue for our appellate review." *Monks Own,* 2006–NMCA–116, ¶ 6. Accordingly, although the Monastery never appeared before the Canadian court to raise its personal jurisdiction defense, the issue was properly preserved by being raised before the New Mexico court in response to Monks Own's petition. *Id.*

{6} Based on the Court of Appeals opinion, the petition for certiorari, and the conditional cross-petition filed by Monks Own, we frame the issues as follows: (1) When enforcing a judgment from a foreign court under the UFMJRA, should a New Mexico court apply the law of the foreign state or the law of New Mexico to determine if the foreign court had personal jurisdiction over the defendant? *See id.* ¶ 13; (2) If applicable, did the Monastery have sufficient minimum contacts with the Canadian jurisdiction to satisfy our principles of due process of law? *See id.* ¶¶ 14–23.

{7} In regard to the first issue, we must determine whether, under the UFMJRA, Canadian law or New Mexico law applies to the determination of whether the Canadian court had personal jurisdiction. To do so, we must interpret the UFMJRA, which is a question of law that we review de novo. *State v. Simmons,* 2006–NMSC–044, ¶ 6, 140 N.M. 311, 142 P.3d 899 (citing *Romero Excavation & Trucking, Inc. v. Bradley Constr., Inc.,* 1996–NMSC–010, ¶ 6, 121 N.M. 471, 913 P.2d 659).

## Law to Apply to Determine Personal Jurisdiction

{8} The UFMJRA lists situations in which a foreign judgment should not be recognized. Section 39–4B–5. One such reason

for non-recognition is if the foreign court did not have personal jurisdiction over the New Mexico party. Section 39–4B–5(A)(2). As noted above, the UFMJRA addresses personal jurisdiction in depth. The UFMJRA lists six situations in which "[t]he foreign judgment shall not be refused recognition for lack of personal jurisdiction." Section 39–4B–6(A). Under the UFMJRA, jurisdiction cannot be found lacking if:

(1) the defendant was served personally in the foreign state;

(2) the defendant voluntarily appeared in the proceedings, other than for the purpose of protecting property seized or threatened with seizure in the proceedings or of contesting the jurisdiction of the court over him;

(3) the defendant prior to the commencement of the proceedings had agreed to submit to the jurisdiction of the foreign court with respect to the subject matter involved;

(4) the defendant was domiciled in the foreign state when the proceedings were instituted, or, being a body corporate had its principal place of business, was incorporated, or had otherwise acquired corporate status, in the foreign state;

(5) the defendant had a business office in the foreign state and the proceedings in the foreign court involved a cause of action arising out of business done by the defendant through that office in the foreign state; or

(6) the defendant operated a motor vehicle or airplane in the foreign state and the proceedings involved a cause of action arising out of that operation.

*Id.*

{9} None of these factors apply to the Monastery. The Monastery was not served in Canada, did not appear before the Canadian court, was not domiciled or incorporated in Canada, did not have a business office in Canada, and the proceedings involved a contractual dispute, not the operation of a motor vehicle or airplane. The contract did include a provision stating that it "shall be governed pursuant to the laws of the Province of Ontario," thereby calling into question whether

Section 39–4B–6(A)(3) applies. *Monks Own,* 2006–NMCA–116, ¶ 10. However, the contract did not state that the Monastery was "submit[ting] to the jurisdiction of the foreign court," *id.,* but rather that Canadian laws would apply to disputes regarding the contract. *Id.* (citing *Telephonic, Inc. v. Rosenblum,* 88 N.M. 532, 537, 543 P.2d 825, 830 (1975)). Thus, none of the factors listed in Section 39–4B–6(A) apply to this case to establish personal jurisdiction.

{10} Importantly, however, the six situations listed in Section 39–4B–6(A) for finding personal jurisdiction are not exclusive. Section 39–4B–6(B) goes on to state, "courts of this state may recognize other bases of jurisdiction." Thus, under the UFMJRA personal jurisdiction can be found if the New Mexico court, in its discretion, finds another basis for jurisdiction. Since this specific section of the UFMJRA is at issue in this case, the core question we must answer is whether the New Mexico court, in considering whether to recognize "other bases of jurisdiction," applies the foreign jurisdiction's law, or only New Mexico law as it relates to federal due process standards, to determine whether the foreign court had a "recognizable" basis for personal jurisdiction other than those specifically enumerated under the UFMJRA.

{11} Monks Own argues that the law of the foreign state rendering the judgment, not New Mexico law, should be used to determine the personal jurisdiction of the foreign court that entered the judgment. Monks Own relies in part on the language of the UFMJRA. Section 39–4B–4 specifically states that a "foreign judgment is enforceable in the same manner as the judgment of a sister state that is entitled to full faith and credit." Monks Own correctly notes that when the issue is whether a court in a sister state had personal jurisdiction, the law of the sister state applies, not New Mexico law. *See Thoma v. Thoma,* 1997–NMCA–016, ¶ 9, 123 N.M. 137, 934 P.2d 1066. Monks Own, therefore, concludes that because the UFMJRA states that a judgment from a foreign court is enforceable in the same manner as a judgment from a sister state, the New Mexico court should have applied Canadian law to determine the jurisdiction of the Canadian court. As will be seen, it is undisputed that Canadian law granted personal jurisdiction of the Canadian court over the Monastery.

{12} The Monastery, on the other hand, points out the due process concerns that arise from recognizing foreign judgments. The Monastery does not agree that under the UFMJRA personal jurisdiction of a foreign court should be determined in the same manner as determining personal jurisdiction of a sister state. The Monastery asserts that because "the Canadian laws regarding personal jurisdiction do not meet the requirements of American due process," New Mexico law, not Canadian law, should determine whether the Canadian court had personal jurisdiction. The Monastery claims that in Canada a court can recognize jurisdiction over a non-resident regardless of whether "the foreign defendant had the requisite minimum contact with the forum that is constitutionally required in the United States" under the Due Process Clause. Accordingly, the Monastery argues that a challenge to a foreign country's personal jurisdiction cannot be determined in the same way as a judgment from a sister state because, in the sister-state context, there is an assurance that due process will be protected. The Monastery concludes that when the judgment is from a foreign country such a guarantee is not present, and thus New Mexico law should apply to determine if the foreign court had personal jurisdiction.

{13} The Court of Appeals dealt quickly with this issue. *See Monks Own,* 2006–NMCA–116, ¶ 13. The Court noted that the UFMJRA listed "specific criteria that guides the enforcing court in determining whether personal jurisdiction exists in the rendering court," *see* § 39–4B–6, and that other courts have held that personal jurisdiction is determined by applying the state's own law. *Monks Own,* 2006–NMCA–116, ¶ 13 (citing *Pure Fishing, Inc. v. Silver Star Co.,* 202 F.Supp.2d 905, 913–17 (N.D.Iowa 2002); *Canadian Imperial Bank of Commerce v. Saxony Carpet Co.,* 899 F.Supp. 1248, 1252 (S.D.N.Y.1995)). The Court of Appeals concluded that "the New Mexico district court as the enforcing court applies New Mexico law,

not Canadian law, to determine whether the Canadian court had personal jurisdiction over the Monastery under the UFMJRA." *Id.*

{14} We agree that the list enumerated in Section 39–4B–6(A) specifically governs the issue of personal jurisdiction. If any one of the listed elements are present, personal jurisdiction exists in the foreign court. Thus, we agree with the Court of Appeals that if one of these elements is present, New Mexico law, specifically Section 39–4B–6(A) of the UFMJRA applies, and the court need not inquire further. *See also Soc'y of Lloyd's v. Reinhart,* 402 F.3d 982, 993 (10th Cir.2005) (stating that, in part because there is no federal statute or treaty governing foreign judgments, the "recognition and enforcement of foreign judgments are governed by state law," specifically the UFMJRA, rather than the Full Faith and Credit Clause under federal law). The Monastery is therefore correct that New Mexico law does govern the question of personal jurisdiction to the extent that Section 39–4B–6(A) applies.

{15} But in this case the six enumerated situations in Section 39–4B–6(A) do not apply. Accordingly, the Court of Appeals applied Section 39–4B–6(B) to determine whether the Canadian court had personal jurisdiction under the "other bases of jurisdiction" provision. *Monks Own,* 2006–NMCA–116, ¶ 14. In applying this Section, the Court of Appeals continued to use New Mexico law, specifically this state's long-arm statute, to determine personal jurisdiction. *See* NMSA 1978, § 38–1–16 (1971) (New Mexico's long-arm statute). However, Section 39–4B–6(B) is not clear on what law, that of New Mexico or that of the foreign jurisdiction, applies to determine "other bases of jurisdiction." The correct answer seems to be that the laws of both jurisdictions are applied, first the foreign law as to the foreign court's jurisdiction, and then American constitutional principles regarding due process of law. Thus, both arguments are correct to a certain extent.

{16} We first turn to other states with statutes similar to our UFMJRA to determine what law is used when the "other bases of jurisdiction" category is applied. At least thirty states and the District of Columbia have adopted versions of the UFMJRA. *Pure Fishing, Inc.,* 202 F.Supp.2d at 912 n. 2. The other states' acts that we viewed utilize the same language as Section 39–4B–6 of the UFMJRA. These acts list six reasons why a foreign judgment should not be refused based on personal jurisdiction and include the catch-all "other bases of jurisdiction" language. *See, e.g., Pure Fishing, Inc.,* 202 F.Supp.2d at 913 (quoting Iowa Code § 262B.4.); *Bank of Montreal v. Kough,* 612 F.2d 467, 470 n. 3 (9th Cir.1980) (quoting Cal.Civ.Proc.Code § 1713.5). We look for guidance to these other states, in part, because the UFMJRA specifically requires that it "shall be so construed as to effectuate its general purpose to make uniform the law of those states that enact it." Section 39–4B–9.

{17} In *Bank of Montreal,* where a Canadian judgment was being domesticated in a California court, the Ninth Circuit Court of Appeals addressed application of the "other bases of jurisdiction" category of the California Act. 612 F.2d at 470. The court noted that the category "intended to leave the door open for the recognition by California courts of foreign judgments." *Id.* at 471. The court then discussed how the Canadian court had determined jurisdiction under its own laws. *Id.* at 471 n. 4. Thus, the court first inquired into Canadian law to determine if the Canadian court had personal jurisdiction. The Ninth Circuit went on to determine that as long as the jurisdictional determination was "in accordance with American principles of jurisdictional due process," the California court should accept the Canadian court's determination of its own personal jurisdiction. *Id.* at 471.

{18} Accordingly, after discussing Canadian law on jurisdiction, the court examined whether "minimum contacts with the forum state and adequate notice" were satisfied to ensure that exercise of jurisdiction comported with American due process standards. *Id.* Finding that minimum contacts and adequate notice were satisfied, the Ninth Circuit held that the Canadian court's exercise of personal jurisdiction under its own laws was recognizable under the California version of the UFMJRA. *Id.*

{19} The majority of courts that have examined this question appear to employ a similar analysis. *See, e.g., id.; In re Birting Fisheries, Inc.,* 300 B.R. 489, 502 (9th Cir. BAP2003) (stating that "[a] judgment is 'conclusive,' within the meaning of the UFMJRA, to the extent that it … was rendered under a system that provided impartial tribunals and procedures compatible with due process"); *Pure Fishing, Inc.,* 202 F.Supp.2d at 914 (stating that under the "other bases for jurisdiction" category, exercise of personal jurisdiction under the laws of a foreign country will be recognized so long as they "comply with the requirements of traditional notions of fair play and substantial justice under the Due Process Clause"); *Canadian Imperial Bank of Commerce v. Saxony Carpet Co., Inc.,* 899 F.Supp. 1248, 1252–53 (S.D.N.Y.1995) (examining first how the Canadian court exercised personal jurisdiction and then turning to New York law to determine if sufficient minimum contacts existed to comply with American due process standards), *aff'd,* 104 F.3d 352, 1996 WL 629749 (2d Cir.1996). Moreover, other courts dealing with this issue state that when carrying out this analysis, the court should be mindful that when a foreign jurisdiction has " 'procedures akin to our own,' " such as Canada, the jurisdictional application of that foreign court need not be examined as closely or narrowly as other foreign jurisdictions. *Canadian Imperial Bank of Commerce,* 899 F.Supp. at 1252 (citing *Clarkson Co. v. Shaheen,* 544 F.2d 624, 630 (2d Cir.1976); *DeYoung v. Beddome,* 707 F.Supp. 132, 135 (S.D.N.Y.1989)).

{20} The American Law Institute follows a similar analysis in its proposed federal statute on the enforcement of foreign judgments in courts of the United States. *See Recognition and Enforcement of Foreign Judgments: Analysis and Proposed Federal Statute* § 3(b) (2005). The American Law Institute developed its proposed statute because of the perceived need for uniformity within the courts of this country regarding recognition of foreign judgments. *Id.* at 1.

{21} The proposed statute states that for the foreign judgment to be enforced in the United States, the foreign court must have jurisdiction over the defendant under *its laws,* and the basis for that jurisdiction cannot be unacceptable in the United States. *Id.* § 3(b). The comments to the proposed statute specifically state that it is "consistent with the practice for recognition and enforcement of sister-state judgments." *Id.* at 45 .(cmt. a). The commentary to the proposed statute goes on to explain that when jurisdiction of the foreign court is challenged, "the court in the United States must be satisfied that the … rendering court had jurisdiction, both under its own law and under standards accepted in the United States." *Id.* cmt. c., at 46. Thus, when personal jurisdiction is at issue, the American Law Institute proposes to apply the law of the foreign country first, then this nation's due process standards, to verify that the foreign judgment deserves to be recognized in our courts. We find the American Law Institute's position on this subject instructive.

{22} In this case, Monks Own presented evidence to the district court that the Ontario court had personal jurisdiction over the Monastery according to Canadian law. Based on this evidence the district court found that the Canadian court did have personal jurisdiction and domesticated the judgment. The Monastery does not dispute the court's finding. Thus, the first prong of the analysis under the UFMJRA is complete.

**Sufficient Minimum Contacts**

{23} The court must determine whether sufficient minimum contacts are present to satisfy " 'traditional notions of fair play and substantial justice,' " otherwise known as due process of law. *State Farm Mut. Ins. Co. v. Conyers,* 109 N.M. 243, 245, 784 P.2d 986, 988 (1989) (quoting *Int'l Shoe Co. v. Wash.,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945)). The precise inquiry is not so much whether the New Mexico long-arm statute has been satisfied when determining whether the Monastery had sufficient minimum contacts to satisfy American due process standards. The inquiry is focused on constitutional principles, but the long-arm statute can be used to illustrate the types of contacts that clearly meet constitutional standards. *See Sublett v. Wallin,* 2004–NMCA–

089, ¶ 14, 136 N.M. 102, 94 P.3d 845 (noting that " 'the analysis of whether the [defendant] transacted business ... within New Mexico merges with the inquiry regarding whether such activities constitute minimum contacts sufficient to satisfy due process concerns' " (quoting *Tercero v. Roman Catholic Diocese,* 2002–NMSC–018, ¶ 8, 132 N.M. 312, 48 P.3d 50)). While the long-arm statute can be used as an illustration, we acknowledge that, at least hypothetically, there could be other such contacts that satisfy traditional notions of fair play and substantial justice under due process, yet not be included in a particular state's long-arm jurisdiction statute.

 {24} The parties agree that the only applicable basis of long-arm jurisdiction is Section 38–1–16(A)(1). *Monks Own,* 2006–NMCA–116, ¶ 19. Under Section 38–1–16(A)(1), a party submits to personal jurisdiction as to any cause of action arising from "the transaction of any business within this state." " 'Transaction of any business' " in this context is defined as " 'doing a series of similar acts for the purpose of thereby realizing pecuniary benefit, or otherwise accomplishing an object, or doing a single act for such purpose with the intention of thereby initiating a series of such acts.' " *Sublett,* 2004–NMCA–089, ¶ 14 (quoting *Tercero,* 2002–NMSC–018, ¶ 10). We look to "the facts in each case," to determine if the transaction of business category is met. *CABA Ltd. Liab. Co. v. Mustang Software, Inc.,* 1999–NMCA–089, ¶ 12, 127 N.M. 556, 984 P.2d 803 (quoted authority omitted).

{25} The pertinent contacts between the Monastery and Canada that relate to the transaction of business in Canada are:

(1) The contract underlying this dispute was to buy a Canadian trade name.

(2) Prior to entering into the contract an agent of the Monastery traveled to Canada at least in part for business purposes.

(3) The sale of the trade name involved filing the assignment of the trademark with a Canadian governmental office, the Canadian Intellectual Property Office.

(4) An agent of the Monastery met in Canada with an Investment Development Officer with the Ontario Ministry of Agricul-

ture and Food regarding the business for which the trade name was bought.

(5) The contract included a choice of law provision stating that Ontario law governed the agreement.

{26} Based on these contacts the Court of Appeals found that "the Monastery had sufficient minimum contacts with Canada under our own long-arm statute and common law." *Monks Own,* 2006–NMCA–116, ¶ 21. The Monastery argues that the Court of Appeals confused doing business with a foreign corporation with transacting business within a foreign country when applying the long-arm statute. Based on our precedent regarding the "transaction of any business," we are not persuaded and agree with the Court of Appeals.

{27} The Monastery asserts that this case is similar to *CABA* where our Court of Appeals decided that a California company had not transacted sufficient business within New Mexico to meet the long-arm statute. 1999–NMCA–089, ¶ 29. In *CABA,* the only contacts with New Mexico were contacts with a New Mexico company via "telephone, fax and mail from California," which did not satisfy the transaction of business standard in New Mexico. *Id.* ¶ 21. However, for the reasons that follow, we see more contact between the Monastery and the Canadian company in Canada than was present between the California company and New Mexico in *CABA.*

{28} While the contract was not finalized in Canada, the Monastery was buying a Canadian trade name. To do so, the names had to be registered with a Canadian governmental office. Thus, the Monastery purposefully availed itself of Canadian governmental protection and to some extent Canadian law. Then, the Monastery's agents had further dealings with the Canadian government while present in Canada that dealt with issues surrounding the trade name purchase. Additionally, the contract itself contained a choice of law clause stating that Canadian law, not New Mexico law, governed the contract. As the Court of Appeals correctly noted, this choice of law provision is "insufficient to establish that one has agreed in advance to submit to the jurisdiction of the courts in any

forum." *Monks Own*, 2006–NMCA–116, ¶ 10 (citing *Telephonic, Inc. v. Rosenblum*, 88 N.M. 532, 537, 543 P.2d 825, 830 (1975)). However, the choice of law provision is another example of how the Monastery purposefully availed itself of the protections of the Canadian legal system. *See CABA*, 1999–NMCA–089, ¶ 21. In other words, the Monastery "has a connection with [Canada] and has acted in [Canada] in such a manner that [they] 'should reasonably anticipate being haled into court there.'" *Id.* ¶ 20.

{29} We find *Conyers*, 109 N.M. 243, 784 P.2d 986 to be of some guidance as well. In *Conyers* we held that a New Mexico court had personal jurisdiction over a *nonresident* couple who had been involved in a car accident in *another* state because the insurance agreement had been entered into in New Mexico. 109 N.M. at 244–45, 784 P.2d at 987–88. We noted that because the couple had transacted business in New Mexico through the purchase of insurance, there were "sufficient minimum contacts with New Mexico for the court to exercise personal jurisdiction." *Id.* at 245, 784 P.2d at 988.

{30} In this case, while the contract was not actually executed in Canada, the Monastery traveled to Canada for business purposes, met with Canadian government officials for business purposes, and agreed to have Canadian law govern the contract. If a Canadian company were to perform similar acts in New Mexico resulting in a legal dispute, our courts would likely have jurisdiction over the Canadian party; there would be sufficient contacts between the Canadian company and this state to satisfy due process. Such actions are at least equal to entering a contract in New Mexico, without any other contact with the state, as was the case in *Conyers.*

**CONCLUSION**

{31} For the foregoing reasons, we affirm the Court of Appeals, and in doing so also affirm the district court order domesticating the Canadian judgment.

{32} IT IS SO ORDERED.

WE CONCUR: EDWARD L. CHÁVEZ, Chief Justice, PATRICIO M. SERNA, and PETRA JIMENEZ MAES, Justices.