**Certiorari Denied, January 2, 2013, No. 33,920**

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**Opinion Number: 2013-NMCA-022**

**Filing Date: October 24, 2012**

**Docket No. 30,879**

**M.R., V.D., P.R., and C.R.,**

        **Plaintiffs-Appellants,**

**v.**

**SERENICARE FUNERAL HOME, L.L.C.,**

        **Defendant-Appellee,**

**and**

**CANTRUP/De VARGAS CORP, d/b/a**
**De VARGAS FUNERAL HOME,**
**VINCENT R. SALAZAR, INMAN**
**SHIPPING WORLDWIDE, and JOHN DOES 1-5,**

        **Defendants.**

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**C. Shannon Bacon, District Judge**

Carter & Valle Law Firm, P.C.
Richard J. Valle
Criostoir O'Cleireachain
Kathryn Lueker-Eaton
Albuquerque, NM

for Appellants
Allen, Shepherd, Lewis, Syra & Chapman, P.A.
E. W. Shepherd
Ryan T. Sanders
Albuquerque, NM

**OPINION**

**FRY, Judge.**

**{1}** In this case, we must decide whether a Utah funeral home established sufficient minimum contacts with New Mexico to justify a New Mexico court's exercise of personal jurisdiction over the funeral home. The funeral home contracted with an Ohio shipping company to prepare Plaintiffs' relative's (Decedent's) body for shipping from Utah, where Decedent died, to New Mexico, her residence. The district court concluded that the funeral home did not have sufficient contacts with New Mexico to satisfy the requirements of due process and dismissed Plaintiffs' claims against the funeral home. We affirm.

**BACKGROUND**

**{2}** Decedent died in a car accident in Utah in September 2009. Plaintiff M.R., a New Mexico resident, contacted Defendant De Vargas Funeral Home (De Vargas) in New Mexico regarding funeral arrangements. De Vargas contacted Defendant Inman Shipping Worldwide (Inman), an Ohio corporation, and Inman contacted Defendant SereniCare Funeral Home, L.L.C. (SereniCare), to prepare Decedent's body for shipping to New Mexico.[1]

**{3}** SereniCare is a Utah limited liability company with offices in two Utah towns, and it is licensed to perform funeral services only in Utah. SereniCare prepared the body according to its agreement with Inman and, according to SereniCare's funeral director, it turned custody of the body over to Inman.[2] SereniCare then billed Inman for the services performed by sending an invoice to Inman in Ohio.

---

[1]In their reply brief Plaintiffs dispute that SereniCare's agreement was with Inman. However, Plaintiffs offered no evidence to refute the evidence presented by SereniCare establishing that SereniCare and Inman were in fact the contracting parties. *See Doe v. Roman Catholic Diocese of Boise, Inc.*, 1996-NMCA-057, 121 N.M. 738, 742, 918 P.2d 17, 21 (explaining that "the party asserting jurisdiction has the burden of establishing such fact" and that if the party resisting jurisdiction presents affidavits or depositions, the party asserting jurisdiction must present affidavits or other evidence demonstrating jurisdiction over the defendant).

[2]Inman filed the affidavit of its general manager in support of its own motion to dismiss for lack of personal jurisdiction. The general manager attested that Inman "never had physical possession, custody or control of" Decedent's body. We do not consider this affidavit in our analysis because Plaintiffs did not rely on the affidavit in attempting to refute SereniCare's evidence. *See id.* In addition, whether Inman did or did not have custody of the body is immaterial to our analysis.

**{4}** Before Decedent's body was sent to New Mexico, Plaintiff M.R. learned from De Vargas that SereniCare was preparing the body in Utah. M.R., who was in Utah at the time, telephoned SereniCare to inquire about viewing the body. The SereniCare employee with whom M.R. spoke suggested that the family not view the body because of severe head trauma and that, in any event, it would be another day before the family could view the body. The family then decided to return to New Mexico and informed SereniCare of this fact. Later, during the viewing of Decedent in New Mexico before the funeral, an employee of De Vargas gave Plaintiffs a bag containing Decedent's personal effects. The next day, Plaintiffs smelled a "foul odor" coming from the bag and discovered Decedent's brain in a Ziploc bag labeled with her name and the word "brain."

**{5}** Plaintiffs sued SereniCare, Inman, De Vargas, De Vargas's owner, and five unnamed John Does for several torts, unfair trade practices, breach of contract, and breach of fiduciary duty. The present appeal involves only Plaintiffs' claims against SereniCare.

**{6}** SereniCare filed a motion to dismiss Plaintiffs' claims, arguing that the district court lacked personal jurisdiction over it. After considering the pleadings and affidavits filed by the parties and following a non-evidentiary hearing, the district court concluded that Plaintiffs failed to establish that SereniCare had sufficient minimum contacts with New Mexico to comport with due process and dismissed the claims against SereniCare.

## DISCUSSION

### Standard of Review

**{7}** We undertake de novo review when considering whether the district court had personal jurisdiction over SereniCare in this case. *Santa Fe Techs., Inc. v. Argus Networks, Inc.*, 2002-NMCA-030, ¶ 12, 131 N.M. 772, 42 P.3d 1221. Because the district court based its ruling on the pleadings and affidavits rather than on evidence presented at an evidentiary hearing, "the standard of review resembles that of summary judgment; the appellate court reviews the pleadings and affidavits or sworn testimony in the light most favorable to the party asserting jurisdiction." *Id.* The party asserting jurisdiction—in this case, Plaintiffs—"need only make a prima facie showing that personal jurisdiction exists." *Id.* (internal quotation marks and citation omitted).

### Elements of Personal Jurisdiction Analysis

**{8}** Plaintiffs argue that SereniCare's tortious acts and/or business transactions in New Mexico establish minimum contacts sufficient to satisfy due process considerations. In analyzing arguments like those advanced by Plaintiffs, our earlier cases utilized a three-part test that considered whether (1) the defendant's acts fell within New Mexico's long-arm statutes, (2) the plaintiff's claims arise out of those acts, and (3) the defendant's acts establish sufficient minimum contacts to satisfy due process concerns. *See Doe*, 121 N.M. at 742, 918 P.2d at 21. However, our more recent cases have observed that it is no longer

3

necessary to determine whether a defendant has committed one of the acts enumerated by our long-arm statute. *Zavala v. El Paso Cnty. Hosp. Dist.*, 2007-NMCA-149, ¶ 10, 143 N.M. 36, 172 P.3d 173. Instead, we consider the long-arm statute "as being coextensive with the requirements of due process" and undertake "a single search for the outer limits of what due process permits." *F.D.I.C. v. Hiatt*, 117 N.M. 461, 463, 872 P.2d 879, 881 (1994) (internal quotation marks and citation omitted).

**{9}** "Due process is satisfied when a defendant has engaged in acts within the state that indicate that the defendant reasonably anticipated being brought into a New Mexico court." *Zavala*, 2007-NMCA-149, ¶ 11. "[T]he minimum contacts required for the state to assert personal jurisdiction over a defendant depend[] on whether the jurisdiction asserted is general (all-purpose) or specific (case-linked)." *Sproul v. Rob & Charlies, Inc.*, 2012-NMCA- ___, ¶ 9, ___ P.3d ___ (No. 31, 167, Aug. 15, 2012).

**{10}** Plaintiffs argue that the theory of specific jurisdiction is applicable to SereniCare because it purposefully established contact with New Mexico. *See Zavala*, 2007-NMCA-149, ¶¶ 17-29 (setting out the distinctions between the theories of general jurisdiction and specific jurisdiction). We consider whether SereniCare "purposefully avail[ed] itself of the privilege of conducting activities within [New Mexico], thus invoking the benefits and protections of its laws." *Id.* ¶ 11 (first alteration in original) (internal quotation marks and citation omitted). "[S]pecific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction." *Sproul*, 2012-NMCA____, ¶ 17 (internal quotation marks and citation omitted).

**{11}** Although our case law establishes that the long-arm statute's requirements are coextensive with the requirements of due process, Plaintiffs have organized their arguments to coincide with two of the acts specified in our long-arm statute. Plaintiffs maintain that SereniCare (1) committed torts in New Mexico because the injury to them occurred in New Mexico and (2) transacted business in New Mexico by agreeing to participate in the process of returning the body to New Mexico. We follow Plaintiffs' organization and address each argument in turn.

**Tortious Acts**

**{12}** Assuming that Plaintiffs are ultimately able to prove that SereniCare was guilty of some form of tortious conduct in its handling of Decedent's body, we agree that the tort occurred in New Mexico. We have stated that for purposes of personal jurisdiction analysis, a tort "can occur in New Mexico when the actual harmful act originates outside the state, but the injury itself occurs inside New Mexico." *Santa Fe Techs., Inc.*, 2002-NMCA-030, ¶ 15. "The place of the wrong is the location of the last act necessary to complete the injury." *Id.* (internal quotation marks and citation omitted). However, as we have noted, the central question is whether Plaintiffs have established that SereniCare had the minimum contacts with New Mexico to satisfy due process.

4

**{13}** Plaintiffs contend that SereniCare had sufficient contacts with New Mexico because it knew its preparation of Decedent's body was for purposes of a viewing and funeral service in New Mexico and that the effects of its improper handling of Decedent's brain would be experienced in New Mexico. Plaintiffs primarily rely for support on the so-called "effects" test articulated in *Calder v. Jones*, 465 U.S. 783, 787 (1984).

**{14}** In *Calder*, the respondent, an entertainer, sued a national newspaper reporter and editor for libel in California. 465 U.S. at 784-85. The petitioners were Florida residents and challenged the California court's exercise of personal jurisdiction over them. *Id.* at 783. The United States Supreme Court held that the newspaper story published by the petitioners "concerned the California activities of a California resident. It impugned the professionalism of an entertainer whose television career was centered in California. The article was drawn from California sources, and the brunt of the harm . . . was suffered in California." *Id.* at 788-89 (footnote omitted). The Court concluded that "[j]urisdiction over [the reporter and editor] is therefore proper in California based on the 'effects' of their Florida conduct in California." *Id.* at 789.

**{15}** We are not persuaded that under *Calder* SereniCare's knowledge of the body's destination in New Mexico and its knowledge that the body was being prepared for a funeral service in New Mexico constitute minimum contacts sufficient to satisfy due process. SereniCare did not engage in any purposeful activities directed at New Mexico. It is a Utah limited liability company, licensed only in Utah, and it has not advertised its services in New Mexico. It did nothing to solicit business from New Mexico. Instead, it entered into an agreement initiated by Inman to prepare a body that was located in Utah for shipping by Inman. Although a SereniCare employee had a telephone conversation with Decedent's relative, it was the relative who initiated the phone call in Utah. SereniCare billed Inman for its services.

**{16}** These circumstances are in sharp contrast to the situation described in *Calder* which involved an article printed in a nationally circulated newspaper whose largest market was the state of California. *Id.* at 785. Thus, the petitioners in *Calder* purposefully availed themselves of the privilege of selling about 600,000 newspapers in California per week, *id.*, and the Supreme Court reasonably concluded that they knew and intended that the effects of their article would be felt in California. Unlike the petitioners in *Calder*, SereniCare's contact with New Mexico was "random, fortuitous, [and] attenuated," and such contacts are insufficient. *Zavala*, 2007-NMCA-149, ¶ 11 (alteration, internal quotation marks, and citation omitted). It was sheer happenstance that the body Inman asked SereniCare to prepare had New Mexico as its destination.

**{17}** Furthermore, even if Plaintiffs are able to prove that SereniCare's preparation of Decedent's body constituted an intentional tort, "[a]n intentional tort without minimum contacts does not comport with due process." *Santa Fe Techs., Inc.*, 2002-NMCA-030, ¶ 19. "The constitutional inquiry . . . is not dependent upon the type of tort or the underlying transaction in dispute. The inquiry is whether [the d]efendants have such minimum contacts

with New Mexico so that the suit does not offend due process." *Id.* ¶ 21.

**{18}**    In addition, New Mexico case law emphasizes that in cases like the present one involving a nonresident defendant's personal services, "focus must be on the place where the services are rendered, since this is the place of the receiver's . . . need." *Tarango v. Pastrana*, 94 N.M. 727, 729, 616 P.2d 440, 442 (Ct. App. 1980) (internal quotation marks and citation omitted). Here, Decedent's family needed the embalming services provided by SereniCare in Utah as part of the process of returning Decedent's body to New Mexico. Assuming that Plaintiffs can prove that SereniCare's performance of those services was deficient, "the idea that tortious rendition of such services is a portable tort which can be deemed to have been committed wherever the consequences foreseeably were felt is wholly inconsistent with the public interest in having services of this sort generally available." *Id.* (internal quotation marks and citation omitted); *see Cronin v. Sierra Med. Ctr.*, 2000-NMCA-082, ¶ 25, 129 N.M. 521, 10 P.3d 845 (explaining that "the residence of a recipient of personal services rendered elsewhere is irrelevant and totally incidental to the benefits provided by the defendant at his own location" (internal quotation marks and citation omitted)). The rendering of personal services, like those provided by SereniCare here, without evidence that the defendant "reached into the forum state in order to attract the [service recipient's] business, simply does not constitute the purposeful availment that is both contemplated in and required by our due process analysis." *Id.* ¶ 26.

**Transaction of Business**

**{19}**    Plaintiffs also argue that SereniCare transacted business in New Mexico by agreeing to return the body to New Mexico and that specific personal jurisdiction may be exercised due to a clear nexus between the transaction and the cause of action. They maintain that the nexus arose because SereniCare engaged in for-profit activities with the goal of serving New Mexico consumers through direct contact with Plaintiffs and in conjunction with the other Defendants to perform part of the funeral services initiated in Utah and concluded in New Mexico.

**{20}**    In support of their argument, Plaintiffs rely on *Monks Own, Ltd. v. Monastery of Christ in the Desert (Monks Own I)*, 2006-NMCA-116, 140 N.M. 367, 142 P.3d 955, *aff'd*, *Monks Own, Ltd. v. Monastery of Christ in the Desert (Monks Own II)*, 2007-NMSC-054, 142 N.M. 549, 168 P.3d 121, which Plaintiffs claim adopted the "clear nexus" test. The problem with Plaintiffs' argument is that the New Mexico Supreme Court granted certiorari in *Monks Own I* and utilized reasoning different from that relied on by this Court. *See Monks Own II*, 2007-NMSC-054, ¶ 1 (stating that the Supreme Court used "a somewhat different analysis from the Court of Appeals"). The Supreme Court in *Monks Own II* did not mention a " 'clear nexus' test" or use the term "nexus" at all.

**{21}**    *Monks Own II* does not help Plaintiffs establish personal jurisdiction over SereniCare. That case involved a Canadian company, Monks Own, that wanted to domesticate in New Mexico a Canadian judgment against a New Mexico monastery. *Id.* ¶¶

2-3. The judgment was for the monastery's breach of a contract to purchase Monks Own's trade name. *Id.* ¶ 2. Our Supreme Court concluded that the Canadian court had personal jurisdiction over the New Mexico monastery in part because the monastery had sufficient minimum contacts with Canada since the subject of the contract was a Canadian trade name, the monastery's agent traveled to Canada for meetings in connection with the contract in question, the monastery filed a trademark agreement with a Canadian governmental office, and the contract stated that Ontario law governed the agreement. *Id.* ¶ 25. Together, these contacts established purposeful availment of the protections of the Canadian government. *Id.* ¶ 28.

**{22}**    In contrast to the monastery in *Monks Own II*, SereniCare demonstrated no purposeful availment of the protections of New Mexico law. There is no evidence in the record that any SereniCare agents initiated contact with Plaintiffs or ever visited or advertised in New Mexico on SereniCare's behalf. The business transaction at issue was between SereniCare and Inman. The only contact with New Mexico was fortuitous and indirect. SereniCare knew the body was being shipped by Inman to New Mexico, and a SereniCare employee spoke to Plaintiff M.R., a New Mexico resident, on the telephone. However, it was M.R. who initiated the call while he was in Utah. These indirect contacts are not the kind of contacts demonstrating a focus on New Mexico that would warrant the exercise of personal jurisdiction over SereniCare.

**{23}**    The circumstances in the present case are closer to those in *Zavala*, where this Court determined that New Mexico courts did not have personal jurisdiction over a Texas hospital. 2007-NMCA-149, ¶ 1. In *Zavala*, even though the hospital treated many New Mexicans, had a generally accessible website, and had a patient transfer agreement with a New Mexico hospital, we nonetheless concluded that these contacts were insufficient to satisfy due process. *Id.* ¶¶ 17-18, 20, 23. We noted that the only contact related to the cause of action was the agreement with the New Mexico hospital, and that agreement was intended "to promote the continuity of care and the timely transfer of patients and records between the facilities[,] . . . not to get more business for either hospital." *Id.* ¶ 23. Similarly, in the present case, the only direct contact with New Mexico related to the cause of action was the telephone call between M.R. and a SereniCare employee that took place in Utah, and there is no evidence that SereniCare had anything to do with initiating that call or that it intended to solicit Plaintiffs or other New Mexico consumers in any way. *See id.* ¶¶ 17-18 (noting that even though seven percent of the hospital's income came from New Mexico residents, there was "no evidence that [the h]ospital intentionally solicited New Mexico patients").

**{24}**    We are equally unpersuaded by Plaintiffs' remaining arguments. They contend that New Mexico has an interest in providing redress to its residents when a suit is based on a contract having a substantial connection with the state. Alternatively, they maintain that SereniCare established minimum contacts when it "placed Decedent's body in the stream of commerce by shipping her remains to New Mexico for viewing and burial."

**{25}**    With respect to its argument regarding the contract's substantial connection with

New Mexico, Plaintiffs rely on *McGee v. International Life Insurance Co.*, 355 U.S. 220 (1957), where the United States Supreme Court stated that "a trend is clearly discernible toward expanding the permissible scope of state jurisdiction over foreign corporations and other nonresidents" and held that a California court properly exercised personal jurisdiction over a Texas life insurance company that had issued a policy to a California resident. 355 U.S. at 221-22, 224. The Court stated that "[i]t is sufficient for purposes of due process that the suit was based on a contract which had substantial connection with [California]." *Id.* at 223.

**{26}** As the Court later explained in *Hanson v. Denckla*, 357 U.S. 235 (1958), the holding of *McGee* is not as broad as Plaintiffs argue it to be. The *Hanson* Court acknowledged that economic developments have caused the requirements for personal jurisdiction to evolve but stated that "it is a mistake to assume that this trend heralds the eventual demise of all restrictions on the personal jurisdiction of state courts. . . . However minimal the burden of defending in a foreign tribunal, a defendant may not be called upon to do so unless he has had the minimal contacts with that [s]tate that are a prerequisite to its exercise of power over him." *Id.* at 251 (internal quotation marks omitted).

**{27}** The *McGee* facts are distinguishable from those in the present case. In *McGee*, the insurance company initiated contact with the ultimate insured in California, the insurance policy was delivered in California, and the premiums were mailed from there. 355 U.S. at 221-22, 223. Here, SereniCare did nothing directed at New Mexico other than to comply with Inman's request to prepare Decedent's body for shipping to New Mexico. Under these circumstances, "the Due Process Clause as a 'territorial shield' is correctly invoked to protect a non-resident who is brought into a forum with which [it] has no contact." *Santa Fe Techs., Inc.*, 2002-NMCA-030, ¶ 35.

**{28}** Plaintiffs' "stream of commerce" argument is equally misplaced. The stream-of-commerce analysis originated in the United States Supreme Court's case, *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286 (1980), where the Court explained that a court may exercise personal jurisdiction over a nonresident defendant that "delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum [s]tate." *Id.* at 297-98. As an initial matter, we are not prepared under the circumstances of this case to characterize Decedent's body as a "product," much less a product being placed into commerce. In addition, stream-of-commerce minimum contacts require something more than "an isolated occurrence," *id.* at 297, and must "arise[] from the efforts of the manufacturer or distributor to serve directly or indirectly, the market for its product in other [s]tates." *Id.*; *see Sproul*, 2012-NMCA-___, ¶ 26 (reaffirming a preference for the approach to stream of commerce in *World-Wide Volkswagen*). While we agree with the dissent that it is possible for services as well as products to be placed into the stream of commerce, Dissent ¶ 33, the evidence in this case fails to show that SereniCare's unsolicited contact with this single Utah-to-New Mexico shipment equates to efforts to serve an interstate market, as contemplated by *Worldwide Volkswagen*.

**{29}** In summary, we conclude that Plaintiffs failed to make a prima facie showing that SereniCare had minimum contacts with New Mexico sufficient to satisfy the requirements of due process. The district court properly dismissed Plaintiffs' claims against SereniCare.

## CONCLUSION

**{30}** For the foregoing reasons, we affirm the district court's judgment dismissing Plaintiffs' claims against SereniCare.

**{31} IT IS SO ORDERED.**

_____
**CYNTHIA A. FRY, Judge**

**I CONCUR:**

_____
**JONATHAN B. SUTIN, Judge**

**TIMOTHY L. GARCIA, Judge (dissenting).**

**GARCIA, Judge (dissenting).**

**{32}** I respectfully dissent in this case. The tortious injury asserted in this case was suffered as a result of SereniCare's business services that it provided as part of a specific multi-party transaction in interstate commerce. As a result, minimum contacts and personal jurisdiction must be addressed in the context of an interstate commercial transaction, similar to the recent analysis by this Court in *Sproul*, 2012-NMCA-__, ¶¶ 16-26 (recognizing the interstate commerce analysis for personal jurisdiction, also known as the stream of commerce rule established under *World-Wide Volkswagen*). Although the present case did not involve the sale of a good or product transported into the stream of commerce, the funeral services provided by SereniCare were part of a direct and continuous stream of commerce that began in Utah and concluded in New Mexico.

**{33}** The majority did focus on the distinction between a service placed into the stream of commerce and a product placed into the stream of commerce. Majority Opinion ¶ 28. Although this distinction appears misplaced, the majority did proceed to address the merits of Plaintiffs' argument. *See Hollinger v. Sifers*, 122 S.W.3d 112, 117 (Mo. Ct. App. 2003) (recognizing that the stream of commerce theory can justify long-arm jurisdiction over a non-resident defendant engaged in providing a service, but holding that the contact requirements are more stringent when the basis for jurisdiction is a service rather than a product); *Bergherr v. Sommer*, 523 N.W.2d 17, 22 (Minn. Ct. App. 1994) (applying stream of commerce theory to assert jurisdiction over non-resident service provider who used an intermediary to provide its services, rather than goods, to forum state residents). At this

9

early stage of the proceedings involving a motion to dismiss, I would conclude that SereniCare's voluntary participation in this commercial event, being conducted through the stream of interstate commerce, was sufficient to establish minimum contacts and personal jurisdiction in New Mexico.

**{34}**     It is undisputed that the funeral services provided by SereniCare for the preparation the Decedent's body were part of a commercial interstate transaction. Majority Opinion ¶¶ 1-4. Despite the fact that a portion of these funeral services were performed in Utah, SereniCare was fully aware of the overall interstate transaction and the fact that these services would conclude with the burial of Decedent's body in New Mexico. *Id.* It is within this specific factual context that SereniCare's minimum contacts with the Plaintiffs and New Mexico must be analyzed. Does this interstate activity by SereniCare invoke the benefits and protections of New Mexico's laws? *Tarango*, 94 N.M. at 729, 616 P.2d at 442 (recognizing that "it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conduction activities within the forum [s]tate").

**{35}**     "A single transaction of business within the state can be sufficient to subject a nonresident defendant to in personam jurisdiction in this state, provided that the cause of action involved in the suit arises from the transaction of that particular business." *Visarraga v. Gates Rubber Co.*, 104 N.M. 143, 146, 717 P.2d 596, 599 (Ct. App. 1986). It is also important to consider whether minimum contacts are asserted under a "general (all-purpose) or specific (case linked)" basis for personal jurisdiction. *Sproul*, 2012-NMCA-__, ¶ 9. It is undisputed that this case only involved a specific burial transaction that originated in Utah and was consummated in New Mexico. Majority Opinion ¶ 9. SereniCare has attempted to isolate the portion of the transaction that occurred in Utah as a means of separating its portion of the funeral services from the full interstate burial transaction that was being arranged by Decedent's family.

**{36}**     Our courts recognize the liberalization and expansion of jurisdiction in state courts over foreign corporations and nonresidents under the stream of commerce rule identified in *World-Wide Volkswagen*. *Visarraga*, 104 N.M. at 148-49, 717 P.2d at 596, 601-02. As we noted in *Sproul*, the delivery of "products into the stream of commerce with the *expectation* that they will be purchased by consumers *in the forum [s]tate*" may be sufficient to satisfy the foreseeability aspects of due process. 2012-NMCA-__, ¶ 20 (citation omitted).

**{37}**     Where a business like SereniCare knowingly undertakes to participate in the interstate commercial activity of burying a body in another state, their burial services provided for the nonresident family are sufficiently foreseeable to purposefully avail their business to the benefits and privileges of the state where the burial will ultimately occur. The knowing and voluntary act of participating this type of specific interstate business activity is neither random, fortuitous, or attenuated as asserted by the majority. *See* Majority Opinion ¶ 16. If a single business transaction in interstate commerce can be sufficient to establish minimum contacts with the forum of a nonresident, then the present case meets the "nexus" test when applied to a specific personal jurisdiction scenario. Burial services are

10

a once in a lifetime event for every person.  When SereniCare knowingly participates in the burial services for an out-of-state family located in a nonresident forum, then New Mexico should recognize that SereniCare is accepting the benefits and protections of our laws when the ultimate burial occurs in this state.  SereniCare's voluntary decision to participate in this type of individualized and case-specific interstate commerce should be sufficient to meet minimum due process requirements and we should recognize that SereniCare has purposefully availed itself to personal jurisdiction in New Mexico.

**{38}**    In conclusion, I do not concur with the result reached by the majority in this case and would reverse the district court's decision to dismiss Plaintiffs' claims against SereniCare.

_____

**TIMOTHY L. GARCIA, Judge**

**Topic Index for *M.R. v. Serenicare Funeral Home, L.L.C.*, No. 30,879**

**APPEAL AND ERROR**
Standard of Review

**CONSTITUTIONAL LAW**
Due Process

**JURISDICTION**
Jurisdiction, General
Long-Arm Statute
Minimum Contacts
Personal Jurisdiction